In the Matter of R. M. HACKER, also known as Al Hacker, dba Hacker's Floor Coverings, Bankrupt.

No. 100527.

United States District Court
S. D. California,
Central Division.

March 21, 1963.

Brown & Brown, Los Angeles, Cal., for Bonafide Mills, Inc.

William J. Tiernan, Los Angeles, Cal., for receiver.

STEPHENS, District Judge.

This is a review from an order of the Bankruptcy Court filed on September 20, 1962, permanently restraining and enjoining Bonafide Mills, Inc. from proceeding with a certain civil action in the Superior Court of the State of California, in and for the County of Los Angeles, (No. 773,788), against A. J. Bumb, receiver and trustee in the above captioned matter.

The record in the Bankruptcy Court which accompanies the Certificate of the Referee on Review, filed October 15, 1962, as supplemented on January 28, 1963, February 26, 1963, and March 20, 1963, shows the following:

On March 6, 1959, Bonafide Mills, Inc. (hereinafter called Bonafide) entered into a written agreement with R. M. Hacker (hereinafter called debtor) whereby the former would ship merchandise to the latter on a consignment basis. (A copy of the written agreement accompanies Bonafide's Claim No. 323 in this Bankruptcy proceeding and is herein referred to as the Consignment Agreement.)

The debtor made an assignment for the benefit of creditors to M. W. Engleman on July 7, 1959. (Assignee's Account and Report filed January 20, 1960, paragraph I.) Bonafide's complaint in the State Court avers that Engleman agreed in writing to be bound by the Consignment Agreement.

On July 13, 1959, an involuntary petition in bankruptcy was filed against the debtor. A. J. Bumb was appointed receiver and became custodian of the assets of the bankrupt on July 14, 1959. Bumb was later appointed Trustee on September 15, 1959. Nowhere in the record does it appear that there is any contention that the receiver or trustee agreed to be bound by the Consignment Agreement.

The debtor then filed a petition to offer a compromise or plan of arrangement to his creditors pursuant to Section 321 of the Bankruptcy Act on September 17, 1959.

On September 15, 1959, Bonafide filed a claim, No. 323, as an unsecured creditor of $8,226.58, for that portion of the consigned merchandise which the debtor had sold, but had not yet paid Bonafide, with an express stipulation that said claim would not waive any further rights that Bonafide has under the Consignment Agreement.

Bonafide then filed a Petition for Reclamation on October 1, 1959, setting forth the Consignment Agreement and requesting the return to Bonafide by the receiver and the debtor (not the trustee) of all uncollected accounts receivable arising from the sale of said merchandise as well as the return of all unsold merchandise. Note that this was after the appointment of the trustee and the filing of the debtor's plan of arrangement. The petition states at page 3 that the receiver had advised Bonafide that all of the consigned merchandise was marked with Bonafide's

name and had been set aside and not inventoried. On October 2, 1959, an order was entered requiring the debtor and the receiver (not the trustee) to appear and show cause why the Petition for Reclamation should not be granted. The matter was taken under submission on October 28, 1959, and numerous continuances followed.

In the Attorney for the Debtor's Application for Fees, filed January 11, 1960, at page 17 it is stated that, "On October 5th, your petitioner was served with a petition for reclamation filed by Bonafide Mills which your petitioner carefully studied and also inquiry was made of the debtor as to what, if any, defense the debtor had to such petition. It appeared that the debtor did not deny the validity of the Claim of Bonafide Mills, that their merchandise was delivered on consignment only."

An order confirming the debtor's plan of arrangement was made on November 3, 1959.

It is admitted that of the merchandise which was the subject of the Petition for Reclamation, $97,266.61 was returned to Bonafide, whether by the receiver or the trustee (who were in fact one and the same person) does not appear. In the receiver's Application for a Temporary Restraining Order, filed July 3, 1962, it is stated that all merchandise was returned to Bonafide. The receiver cites paragraph VII, page 3 of the Receiver's First Report and Account, filed February 1, 1960, which alleges that "petitioner caused all third party merchandise to be marshalled and did thereafter contact the various third party claimants and with the debtor's approval did return the same to said third parties entitled thereto."

After the merchandise was returned to Bonafide, it determined that there was unaccounted for merchandise in the amount of $16,578.98, which was subsequently referred to in the record as "lost merchandise."

On October 31, 1960, over a year after the Petition in Reclamation was filed, a stipulation between Bonafide and the debtor was filed, stipulating to allow Bonafide to increase the amount of its unsecured claim, No. 323, from $8,226.58 to $27,590.93. Of this increase, $16,578.98 was stated to be the value of the merchandise stated in the Petition for Reclamation which had not been returned to Bonafide. It was also stipulated that Bonafide withdrew its Petition for Reclamation and, furthermore, that this agreement should not be construed as an admission of liability of any person for the loss of said property, nor should it prejudice Bonafide's right to pursue any remedy it desired against any other party for the loss of the merchandise. The agreement contained in the stipulation contemplated payment to unsecured creditors to the extent of 27.5% of their claims. Of the amount of such dividend received, 60% was to be applied to the reduction of Bonafide's claim for loss of the merchandise should Bonafide pursue any other remedy for damages. The referee signed an order to the same effect which was appended to the stipulation.

On February 1, 1960, the receiver filed his first and final report and accounting in which no specific reference was made to the consigned property; although, as previously stated, the report indicated that all merchandise not belonging to the debtor was returned to the third party claimants. The date of such return is not ascertainable from the record except that it was prior to the stipulation dated October 31, 1960. On January 24, 1961, the receiver filed his second and final report and accounting which was approved by an order dated March 27, 1961. This same order allowed a 27.5% dividend on all unsecured claims as stated above. A final decree in the above entitled matter was entered by the Bankruptcy Court on April 26, 1961.

On June 22, 1961, Bonafide filed an action in the Superior Court of the State of California in and for the County of Los Angeles, against the receiver, trustee and assignee, containing four counts. The first count appears to be against the assignee for the benefit of creditors and

the receiver, but not the trustee. It is Bonafide's claim in this count that the assignee for the benefit of creditors agreed in writing to be bound by the Consignment Agreement, that both defendants failed to return the merchandise to Bonafide and concludes that defendants owe $16,578.98 to plaintiff.

The second count appears to claim the same sum from both the receiver and the trustee in the averment that the receiver and later the trustee took possession of the merchandise without plaintiff's consent and contrary to plaintiff's rights, and refused to turn them over on demand.

The third count avers that the receiver and later the trustee took possession without plaintiff's consent and contrary to plaintiff's rights, and that as receiver the defendant undertook "the duty of accounting for all property that has come into his possession in connection with the bankruptcy proceedings," and that although demand has been made for the return of said merchandise, defendant has failed and refused to turn it over and $16,578.98 is due to plaintiff.

The fourth count incorporates all but one paragraph of the first count and, therefore, seems only to affect the receiver and not the trustee, and adds that plaintiff is the owner and entitled to the possession of the merchandise and that the products of the plaintiff became lost due to the negligence of the receiver, to the plaintiff's damage in the sum of $16,-578.98.

On July 3, 1962, the bankruptcy proceedings were reopened and the receiver (not the trustee) filed an application for a temporary restraining order to restrain Bonafide from proceeding in any manner with the Superior Court action, for an order to show cause why a permanent injunction should not be granted and for reasonable attorney's fees and other relief. This application was granted by an order of the same date.

The receiver on July 30, 1962, filed an answer to Bonafide's Petition for Reclamation of October 1, 1959, challenging for the first time Bonafide's title to the merchandise in question and the validity of the written Consignment Agreement.

A hearing on the order to show cause why a permanent injunction should not be granted, was held on July 27, 1962, and on September 12, 1962, it was ordered that Bonafide "be forever enjoined from proceeding in the State Court in its action entitled 'Bonafide Mills, Inc., a corporation, vs. A. J. Bumb,' No. 773,788, or from instituting any other action in any other State Court in reference to the same cause of action; and that "Bonafide Mills, Inc. pursue its remedy for the recovery of the loss of any goods or their reasonable value in the Bankruptcy Court." This order was amended on September 20, 1962, to specify that the order was applicable only with regard to proceedings against A. J. Bumb. The injunction is not restricted to suit against A. J. Bumb in his official capacity as a receiver or trustee in bankruptcy.

On September 27, 1962, Bonafide filed a Petition for Review of the Referee's Order of September 20, 1962.

All creditors' claims filed in this proceeding concerned debts owed to the respective creditors on July 13, 1959, the day when the involuntary petition in bankruptcy was filed, regardless of the date upon which the claim was filed, amended or allowed. Bonafide originally claimed that the debtor had sold some of the goods consigned to him by Bonafide, but had failed to remit to the consignor according to the Consignment Agreement. It may be inferred from the record that these goods were sold in the ordinary course of business as authorized by the consignor. After the consigned goods which came into the possession of the receiver were returned to Bonafide and inventoried, Bonafide discovered that $16,578.98 worth of goods (a value which included the freight to get them to the consignee) were unaccountably missing. At this point, Bonafide amended its claim to include this sum.

In amending its claim to include the value of the goods which were unaccountably missing, Bonafide represented to

the Bankruptcy Court, under oath, that the shortage existed on July 13, 1959, the day of filing the involuntary petition, and that on that day the bankrupt debtor was indebted to Bonafide for their value in the amount stated. Such a claim could have been based upon the Consignment Agreement provision that the consignee should be responsible for all merchandise not accounted for. The proof of this claim was such as to satisfy the Referee and the claim was allowed. Bonafide invoked the jurisdiction of the Bankruptcy Court for this purpose and thereby submitted to its jurisdiction to try all matters affecting the validity of such claim, including the verity of the representation that said claim had accrued on or before July 13, 1959.

 The receiver was appointed on July 14, 1959, and in his official capacity as receiver had nothing to do with any of the goods consigned by Bonafide to the debtor before that date. If the loss of the goods had occurred by July 13, 1959, the receiver could not be responsible for their loss. Moreover, if the loss occurred after July 13, 1959, Bonafide's claim and the representations in support thereof were erroneous or false. Jurisdiction to determine whether they were true or false belonged exclusively to the Bankruptcy Court. The Bankruptcy Court exercised this jurisdiction and settled the issue by allowing the claim.

At a later time, the receiver and the trustee filed their respective accounts. Bonafide had an opportunity at this time to object to the accounts and point out that the receiver and later the trustee had the missing merchandise in their possession and should be held accountable. 11 U.S.C. § 77 as amended June 22, 1938. Of course, this position would have impeached Bonafide's allowed claim against the bankrupt. Of course, Bonafide could have asserted the claim in the alternative against the debtor, the assignee for the benefit of creditors, the receiver and the trustee in the Bankruptcy Court [11 U.S.C. § 11] or possibly in a plenary action before the bankruptcy was closed. [Foust v. Munson Steamship Lines, 299 U.S. 77, 57 S.Ct. 90, 81 L.Ed. 49 (1936)] This would have permitted a just adjudication and a proper dividend to all of the creditors. Instead, Bonafide preferred to receive its 27.5% dividend and bring suit elsewhere against Engleman and Bumb.

Although the complaint in the State Court action identifies defendant Bumb as either receiver or trustee, it is clear that recovery is sought from him in his individual capacity and not in his official capacity. The fact that he was receiver or trustee explains how the missing merchandise is alleged to have come into his possession. He is accused of a wrongful act consisting of failure to either account for the merchandise to the Bankruptcy Court or to deliver it to the plaintiff, the owner. These averments amount to a charge that he either converted the merchandise or lost it through his negligence.

These claims are in obvious and direct conflict with Bonafide's allowed claim. It appears to be an attempt at piecemeal litigation of a single cause of action. The receiver argues with considerable persuasion in his application for injunction that any action against him should be barred by res judicata and by laches in light of his substantial and prejudicial change of position.

 The essence of the foregoing arguments may be cast as affirmative defenses in the State Court action. [Baird v. Superior Court, 204 Cal. 408, 412, 268 P. 640 (1928).] That forum is the one to judge whether the cause of action has been split, whether the matter has been adjudicated by a prior judgment of another court entitled to full faith and credit and whether the plaintiff should otherwise be estopped to bring such a suit at this time. [Baird, supra at 414, 268 P. at 642.]

The receiver has cited cases wherein the Bankruptcy Court enjoined a claimant from the prosecution of a State Court action against a receiver for conversion of property. [In re Green, 58 F.2d 807 (E.D.N.Y.1932); In re Trayna & Cohn,

195 F. 486 (2d Cir., 1912); In re Mertens, 131 F. 507 (D.C.N.Y.1904).] However, in each of these cases, the property in question was in the possession of the Bankruptcy Court. That court had exclusive jurisdiction to determine the claims of property within its possession. In each instance, the claimant invoked the jurisdiction of the Bankruptcy Court to determine his claim to the property and when that question was determined adversely to him, each attempted a redetermination of that issue in the State Court by suing the receiver for his acts in carrying out the order of the Bankruptcy Court.

■ These cases are to be distinguished from the case at bar by a basic fact. The Bankruptcy Court in the instant case impliedly found that the property, which the receiver claims is the res common to both actions, never came into the possession or constructive possession of the receiver or the court. This is an inescapable and necessary finding to justify the allowance of Bonafide's claim. In the cited cases, the plaintiffs sought to hold the receiver liable for acts performed pursuant to the orders of the court and involving property in the actual possession of the receiver.

Finding of Fact No. 1 is clearly erroneous. It finds no support in the record which shows as clearly as it shows any fact that the missing merchandise was missing before the receiver was appointed. The merchandise which is the subject of both of the proceedings was missing at the time the involuntary petition in bankruptcy was filed and for all the record shows, it still is. This at least is the claim made in the State Court. It could not have been in custodia legis.

■ Moreover, there is no pending controversy in the Bankruptcy Court in this proceeding. The claim has been allowed and paid. The receiver's and the trustee's accounts have been settled. Also, Bonafide's Petition in Reclamation was withdrawn as to all parties as effectively as though it had never been filed. The Referee's Finding of Fact No. 4 is clearly erroneous because it treats the Petition in Reclamation as still existing as to the receiver. A receiver has a limited function which ceases upon the appointment of a trustee. [Stanton v. Busch, 9 Cir., 59 F.2d 668 (1932).] Furthermore, a Petition in Reclamation may be withdrawn with the court's permission, unless the *trustee* has already answered and asserts a right to affirmative relief. [In re Dato, 7 Cir., 99 F.2d 703, 706 (1938).] Thus, the Receiver's Response to the Order to Show Cause re Petition in Reclamation of October 1, 1959, filed on July 30, 1962, subsequent to the receiver's discharge, the closing of the bankruptcy proceedings and the institution of the State Court action, is surplusage and of no effect.

Finding of Fact No. 5 attempts to capsulize in a line the State Court complaint which is digested above. Finding of Fact No. 6 is to the effect that the Petition in Reclamation refers to the same subject matter which leads to the Conclusion of Law No. 2 that Bonafide elected to litigate in the Bankruptcy Court and Conclusions of Law Nos. 3 and 4 that the Bankruptcy Court has exclusive jurisdiction and the other action should be enjoined. These have a common fallacy that the Petition in Reclamation was not withdrawn. All are clearly erroneous for this reason.

■ While the general rule is that a receiver may not be subjected to suit without leave of the court which appointed him, this rule is generally subject to exception where, for instance, the State Court action does not affect the custody or control of the receivership property, or where the property is not in the actual or constructive possession of the receiver, or where the receivership has terminated. See generally, 75 C.J.S. Receivers § 333 (1952).

Moreover, the general rule has been expressly limited by 28 U.S.C. § 959(a), which reads:

"(a) Trustees, receivers or managers of any property, including debt-

ors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property. Such actions shall be subject to the general equity power of such court so far as the same may be necessary to the ends of justice, but this shall not deprive a litigant of his right to trial by jury."

■ This statute is applicable to bankruptcy receivers. [Vass v. Conron Bros. Co., 59 F.2d 969, 970 (2nd Cir. 1932)]

From the point of view of the record in the bankruptcy court, the statute is inapplicable because the missing merchandise was missing when the receiver was appointed and never came into his hands. From the point of view of the averments of the State Court action, if it is claimed that the loss was due to the acts or transactions of the receiver in carrying on business connected with such property, the injunction would be forbidden by the statute. Otherwise the State Court suit falls within the exceptions to the rule against suing such an officer other than in the court which appointed him.

■ Where the acts complained of were not in response to a directive of the court of appointment and the suit in another court does not affect the administration of the bankrupt's estate, or in any situation where the receiver may be held personally liable, an action to enforce such liability should be permissible without leave of the court appointing him. [See In re Spechler Bros., 185 F. 311 (D.C.N.Y., 1911); In re Kanter & Cohen, 121 F. 984 (1903); In re Spitzer, 130 F. 879 (1904); 5A Remington, On Bankruptcy, § 2337.]

When properly pleaded as defenses and established by proof in the State Court, the points made by the receiver in support of the injunction are entitled to the same consideration in that court as they would receive here. The injunction contemplates that all these matters should be litigated in the Bankruptcy Court.

Since such litigation does not affect property in the actual or constructive possession of the receiver or trustee or interfere with the administration of the debtor's estate and since the Bankruptcy Court was, in fact, through with the whole matter including the discharge of the receiver and trustee, no facts exist which make it imperative for the court to retain jurisdiction in the exercise of its general equity power to accomplish the ends of justice.

Our sister court of the State of California which has concurrent jurisdiction is as well designed and equipped and is as competent to pass upon the issues raised by the receiver as is this one. It should be noted that litigation is not to be avoided in either event. The question is where to litigate. The record shows that Bonafide has not consented to the jurisdiction of the Bankruptcy Court by filing its claim because that claim was against the bankrupt, or by filing its Petition in Reclamation because that was withdrawn.

The Superior Court of the State of California is a proper forum for the trial of the action which Bonafide filed there. The injunction should be dissolved.