In re CINEMATRONICS, INCORPORATED, a California corporation, Debtor.

Harold S. TAXEL, Trustee, Plaintiff,

v.

ELECTRONIC SPORTS RESEARCH; E & E Industries, Inc.; Pacific Investment Resources, Inc.; and Roland C. Colton, Defendants.

Bankruptcy No. 82–04012–P11.
Adv. No. C86–0853–H11.

United States Bankruptcy Court, S.D. California.

Jan. 10, 1990.

---

See also, D.C., 111 B.R. 902.

Robert A. Hessling, Estes & Hoyt, San Diego, Cal., for plaintiff.

Philip J. Giacinti, Jr., Procopio, Cory, et al., San Diego, Cal., for defendants.

## MEMORANDUM DECISION

JOHN J. HARGROVE, Bankruptcy Judge.

Plaintiff Harold S. Taxel, trustee ("trustee") moves this court pursuant to Federal Rule of Civil Procedure 56 ("Fed.R.Civ.P. 56") for partial summary judgment or, in the alternative, for an order adjudicating facts existing without substantial controversy, with respect to the liability of defendants Electronic Sports Research ("ESR"); E & E Industries, Inc. ("E & E"); Pacific Investment Resources, Inc. ("PIR"); and Roland C. Colton ("Colton")[1] to the trustee for actual damages, attorneys' fees and costs on the trustee's first claim for relief alleging violation of the automatic stay. 11 U.S.C. § 362.

As discussed more specifically herein, this court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334 and § 157(b)(1) and General Order No. 312–D of the United States District Court, Southern District of California. This is a core pro-

ceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

## FACTS

On September 17, 1982, Cinematronics, Inc. ("Cinematronics") filed its voluntary petition under Chapter 11 of the Bankruptcy Code. On April 9, 1984, Harold S. Taxel ("trustee") was appointed as the Chapter 11 trustee. A plan has not yet been confirmed.

At the time of his appointment, Cinematronics was being operated under the direction of its President, James D. Pierce ("Pierce"). Shortly after his appointment, the trustee informed Pierce that Pierce could not, among other things, enter into any major contracts, except with the trustee's consent and direction.

On or about May 8, 1984, Colton met with Pierce at Cinematronics' offices and discussed generally Colton's ideas regarding a baseball video game. The trustee was unaware of the meeting. Prior to their discussions, Colton required Pierce to execute a Confidential Disclosure Agreement ("Agreement").

A few days after the May 8, 1984 meeting, Mr. Don Heffner ("Heffner"), in-house counsel for Cinematronics, told Colton in a phone conversation that Cinematronics was in a Chapter 11 bankruptcy proceeding.

In a second meeting which took place between Colton and Pierce sometime in mid-June 1984, Colton learned from Pierce that a trustee named Taxel had been appointed for Cinematronics in its Chapter 11 case. Subsequent to the meeting, Pierce then asked the trustee whether the trustee was interested in producing the game. The trustee requested his counsel, attorney Kevin J. Hoyt ("attorney Hoyt"), to investigate the reputation of the principal involved. Attorney Hoyt subsequently told the trustee that the principal involved in the negotiations with Pierce was Colton and that Colton was an attorney, who had

---

**1.** All of the defendants will hereinafter be collectively referred to as "ESR". Defendant E & E was previously dismissed as a defendant in this action by this court's order entered December 27, 1987.

been convicted and was on probation for some type of tax fraud.

The trustee then told Pierce that he didn't want to do business with Colton and that Pierce should apprise Colton of that fact. Pierce did not tell the trustee about the Agreement because it never occurred to him to tell the trustee.

In 1985, Cinematronics began to design and develop a baseball video game which it called the "World Series" game ("game").

In late October 1985, representatives of Cinematronics appeared at a three day trade show sponsored by the Amusement and Music Operators Association ("AMOA"), at the Hyatt Regency Hotel in Chicago, Illinois. Representatives brought the game for display and marketing. The trustee described the trade show as crucial to the marketing efforts of the game and to the reorganization of Cinematronics.

Colton's declaration testimony indicated that in September or October 1985, while at a video arcade in San Diego, he discovered Cinematronics' "World Series" game and was shocked to see "his" game. Colton later learned that a trade show of new video games was to take place in Chicago from October 31 through November 2, 1985.

On the morning of October 31, 1985, at 9:42 a.m., Colton caused ESR and E & E to file a Motion for Temporary Restraining Order ("TRO Motion") in the Circuit Court of Cook County, Illinois. Concurrently, attorneys for ESR filed a three count complaint which sought, *inter alia* to temporarily restrain and preliminarily and permanently enjoin Cinematronics and Pierce, among other defendants, from displaying the game at the AMOA trade show and from otherwise displaying, distributing, selling or taking orders for the game. The order further required Cinematronics and Pierce to turn over all drawings, brochures, video games and other materials utilizing ESR's and E & E's alleged trade secrets to the plaintiff during the pendency of the action.[2] The complaint also requested an accounting and sought damages based on a

breach of the Agreement, breach of fiduciary duty and misappropriation of trade secrets and prayed for treble punitive damages. The TRO Motion was granted by the Circuit Court and the debtor was ordered to immediately stop and desist from using, showing, disclosing, selling, promoting or displaying the game. The TRO became effective as of 11:30 a.m. on October 31, 1985. The Circuit Court set a further hearing on whether the preliminary injunction should issue for 11:30 a.m. on November 1, 1985.

Within hours after obtaining the TRO in Chicago, at approximately 12:00 p.m. San Diego time, Colton and his attorney Bernard Kleinke ("Kleinke") approached the trustee in the United States Courthouse in San Diego, California. Colton identified himself as the principal of ESR and E & E, and Kleinke as their attorney. Colton and Kleinke told the trustee that unless the trustee agreed to assign to ESR and E & E an immediate ten percent (10%) royalty on all sales of the game, they would use the Illinois TRO to prevent any sales of the game at the AMOA trade show. This was the first time the trustee learned of the issuance of the Illinois Circuit Court TRO. The trustee refused to grant a 10% royalty and immediately retained special counsel in Cook County, Illinois, to intervene in the action and vacate the Illinois Circuit Court TRO. The trustee's motion to intervene was granted but the motion to vacate the TRO was denied.

On the morning of November 1, 1985, the trustee filed in this court an Application of Trustee for Temporary Restraining Order and Order to Show Cause Why Preliminary Injunction Should Not Issue and supporting Memorandum and Declarations. The trustee concurrently filed a Complaint for Preliminary and Permanent Injunction and for Temporary Restraining Order and Order to Show Cause. The trustee's Application was opposed by ESR and E & E. Over the opposition of ESR, this court issued its Temporary Restraining Order and Order to Show Cause Why Preliminary Injunction Should Not Issue. The Order enjoined the

---

**2.** The trustee was not named as a defendant nor     given notice of the motion.

enforcement of the Illinois TRO and the issuance of any similar orders by any courts in connection with the game.

Hearing on the preliminary injunction was set for November 6, 1985 but was continued by stipulation of parties to January 13, 1986.

On October 31, 1986, the trustee filed the instant adversary proceeding for compensatory and punitive damages against ESR, E & E, Pacific Investment Resources, Inc. ("PIR") and Colton for violation of the automatic stay, abuse of process and interference with prospective business advantage.

## DISCUSSION

The trustee requests that this court render a partial summary judgment in his favor on the issue of liability for actual damages, attorneys' fees and costs on the trustee's first claim for relief based upon violation of the automatic stay 11 U.S.C. § 362. The trustee concedes that there are genuine issues of fact as to the amount of any damages sustained by the estate. More specifically, the trustee contends that there is no genuine issue as to any material fact that ESR, E & E, PIR and Colton willfully violated the automatic stay under 11 U.S.C. § 362 and are liable for actual damages, including attorneys' fees and costs, under § 362(h).

### (a) *Section 362(h) Remedies.*

■ This court concludes that § 362(h) and that portion of § 362(a)(3) which states, "... or to exercise control over property of the estate;" as a matter of law, cannot be relied on by the trustee since § 362(h) and the above cited portion § 362(a)(3) were only enacted on July 10, 1984 as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984. Both sections apply only to cases filed on or after October 10, 1984.

### (b) *Jurisdiction.*

ESR contends that the complaint filed by the trustee in this proceeding for (1) violation of 11 U.S.C. § 362, (2) abuse of process, and (3) interference with prospective advantage is not properly the subject matter of "core" jurisdiction.

■ The trustee only seeks summary adjudication on the first claim for relief, the violation of 11 U.S.C. § 362. Accordingly, this court need not concern itself with ESR's arguments over non-core jurisdiction as to the remaining causes of action at this time since the trustee has not placed them in issue before this court. The first claim for relief is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

### (c) *28 U.S.C. § 959(a) Exemption From Automatic Stay.*

ESR argues that its action of filing its motion for temporary restraining order and acquiring and enforcing the Illinois TRO are authorized under 28 U.S.C. § 959(a) and consequently, as a matter of law, the filing of the action in the Illinois State Court cannot be a violation of 11 U.S.C. § 362.

28 U.S.C. § 959 provides:

(a) Trustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property. Such actions shall be subject to the general equity power of such court so far as the same may be necessary to the ends of justice, but this shall not deprive a litigant of his right to trial by jury.

(b) Except as provided in section 1166 of title 11, a trustee, receiver or manager appointed in any cause pending in any court of the United States, including a debtor in possession, shall manage and operate the property in his possession as such trustee, receiver or manager according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof.

■ Specifically, ESR contends that trustees may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property.

ESR then argues that the automatic stay invoked by the filing of a bankruptcy petition does not insulate a bankruptcy trustee for his post-petition activities in carrying on the debtor's business. ESR argues that the Illinois action was based upon post-petition activities of the trustee in carrying on the business of Cinematronics in the manufacture and sale of electronic video games and that therefore there is no violation of § 362.

This court concludes that ESR's reliance on 28 U.S.C. § 959(a) is misplaced. Had ESR merely filed its complaint in the Illinois State Court alleging contract and tort claims and praying for damages, this court would concur with ESR's position. However, ESR's action of filing a motion for temporary restraining order and acquiring and enforcing the Illinois TRO against the trustee at the AMOA trade show, and resisting the trustee's efforts to resume marketing the "World Series" game at the AMOA trade show, in this court's view, constituted an act to obtain possession of property of the estate, i.e., possession of the World Series game, drawings and brochures and therefore was a violation of § 362(a)(3).[3] It is clear that ESR's actions were taken to establish its purported proprietary interest to the World Series game. The evidence is uncontradicted that at the ex parte hearing before the Illinois Circuit Court, ESR's counsel, Joseph F. Schmidt, advised the Circuit Court that Cinematronics had stolen trade secrets from Colton which had been incorporated in the World Series game. The purpose of the restraining order and the order thereon were clearly intended to wrest the possession and management of the World Series game away from Cinematronics at the AMOA trade show. This court concludes that these actions cannot be taken without leave of the bankruptcy court. *In re Hacker*, 217 F.Supp. 393 (S.D.Cal.1963); and *Dickinson v. Willis*, 239 F. 171 (S.D.Iowa

1916). 7, Pt. 2 *Moore's Federal Practice* para. 66.07[2], at 1937–1938 (2d ed.1989).

Section 959(a) should not be construed to permit suits that aim to establish adverse rights in the estate's property or otherwise interfere with the trustee's control and management of the estate. ESR's proper remedy in this case, if it felt compelled to pursue a remedy as drastic as a temporary restraining order, should have been to intervene in the bankruptcy proceeding by filing its motion for relief from stay to proceed with the State Court TRO. *See* Federal Practice and Procedure, by C. Wright & A. Miller, § 2984, pp. 33–34 (15th ed.1988).

(d) *ESR's Contention That Claims Arising Post–Petition Are Not Subject to the Automatic Stay.*

Citing *Matter of M. Frenville Co., Inc.*, 744 F.2d 332, 335 (3d Cir.1984) (*"Frenville"*) and *Holland America Ins. Co. v. Succession of Roy*, 777 F.2d 992 (5th Cir. 1985) (*"Holland America"*), ESR contends that the stay does not apply to post-petition claims.

This court finds *Frenville* and *Holland America* factually distinguishable. In both *Frenville* and *Holland America*, the Appellate Courts found that the litigation instituted by the creditors did not have the object of "obtaining possession of property of the estate" as is required by § 362(a)(3). *Holland America, supra*, at 996. Rather, the post-petition litigation in *Frenville* was instituted to liquidate a contingent claim, while the insurer's interpleader action in *Holland America* was filed to provide an orderly forum for resolution of conflicting claims to proceeds of an insurance policy belonging to the estate.

In the instant case, ESR's action of obtaining the temporary restraining order and then resisting its dissolution by the

---

**3.** The order of the Circuit Court of Cook County dated October 31, 1985, provided *inter alia* that, "the defendants are hereby ordered to immediately stop and cease displaying the 'World Series' video game." The declaration of the trustee dated November 1, 1985, and filed in support of his motion for a temporary restraining order

stated, *inter alia* that, "... Cinematronics had been displaying and taking orders for the sale of the 'World Series' game at a major trade show sponsored by the Amusement and Music Operator's Association, which is being held at the Hyatt Regency Hotel in Chicago, Illinois."

trustee was, in this court's view, an attempt to obtain possession of property of this estate.

It is clear that at the time ESR obtained the TRO, the World Series game constituted after acquired property of the estate. 11 U.S.C. § 541(a)(7). Under 11 U.S.C. § 362(a)(3), the automatic stay prohibits any act to obtain possession of property of the estate. This court concurs with the conclusion in *In re Dakota Industries, Inc.*, 31 B.R. 23, 25 (Bankr.D.S.D.1983) that the § 362(a)(3) prohibition applies not only to the estate created at the commencement of the case upon the filing of the bankruptcy petition, but also any property acquired by the estate thereafter.

### (e) *Defendants' Knowing Violation of the Automatic Stay.*

■ ESR contends that there still exists a material issue of fact whether it was apparent to the defendants that Cinematronics might still be in bankruptcy as late as October 31, 1985. ESR argues that the continued existence of the Chapter 11 proceeding bankruptcy was not clear to Colton and ESR's attorneys until after the Illinois TRO was issued and served on Pierce. However, it is uncontradicted that Colton, individually and as ESR's principal, was made aware of the existence of the Cinematronics Chapter 11 in 1984: first when Heffner, the in-house counsel for Cinematronics, told Colton in a phone conversation that Cinematronics was in a Chapter 11 bankruptcy proceeding; and second when Pierce told Colton in mid-June 1984 that a trustee named Taxel had been appointed for Cinematronics in the Chapter 11 case.

Having learned of the existence of the Chapter 11 proceeding in 1984, Colton, an attorney, had a duty prior to the filing of the Illinois TRO in October 1985 to ascertain whether the Cinematronics' bankruptcy and the automatic stay were still pending. The mere passage of time did not relieve or excuse Colton to further inquire

as to whether the Cinematronics Chapter 11 was still pending before seeking the Illinois TRO. ESR did not offer any supporting evidence which could have justified Colton's self-serving belief that Cinematronics might not still be in its Chapter 11 proceeding on October 31, 1985.

■ Additionally, it is undisputed that both Colton and attorney Kleinke on or about October 31, 1985, at approximately 12:00 p.m. knew that the Cinematronics Chapter 11 case was pending since they approached the trustee in the United States Courthouse in San Diego, California, and told the trustee that unless he agreed to assign an immediate 10% royalty from all sales of the "World Series" game they would use the temporary restraining order, which they had obtained in Chicago, to prevent any sales of the World Series at the AMOA trade show in Chicago. When the trustee refused the offer, Colton and ESR refused to dissolve the Illinois TRO and actively opposed the trustee's motion filed in this court to vacate the Illinois TRO and to obtain a temporary restraining order restraining the Illinois Circuit Court and ESR from effectuating the provisions of the October 31, 1985, Illinois TRO in order to restore the status quo and permit the trustee to display and market the World Series game at the AMOA trade show. By not dissolving the Illinois TRO voluntarily and opposing the trustee's motions to vacate the Illinois TRO and to obtain a temporary restraining order in this court, ESR continued to violate the automatic stay.[4] Once a creditor learns that it has violated the automatic stay, it must act immediately to restore the status quo. *In re Holman*, 92 B.R. 764, 769 (Bankr.S.D.Ohio 1988).

Accordingly, this court concludes that the defendants were aware of Cinematronics' still pending Chapter 11 proceeding when the TRO was applied for and when they resisted the trustee's attempts to dissolve the TRO.

---

**4.** At the hearing held in this court on November 1, 1985, at approximately 10:50 a.m., on the trustee's motion for a temporary restraining order, ESR was represented by attorney John Cutchin, Esq. of Duckor and Spradling and by attorney Bernard Kleinke, Esq., who both appeared before this court and argued in opposition to the trustee's motion for temporary restraining order.

ESR's reliance upon *In re Kish*, 41 B.R. 620 (Bankr.E.D.Mich.1984 and *Matter of The Briarcliff*, 15 B.R. 864 (D.N.J.1981) is misplaced since both of those cases are distinguishable by their facts and involved actions brought against the reorganization estate to compel compliance with state regulatory provisions rather than to obtain the debtor's property.

This court therefore concludes that the trustee may seek compensatory damages including attorneys' fees proximately caused by ESR's obtaining the Illinois TRO in violation of the automatic stay.

■ Contrary to the trustee's contention, this court concludes that the trustee may not, in this action, claim attorneys' fees incurred in litigating the counter-claims filed by ESR in adversary proceeding C85–0958–H11 also pending in this court (the "C85 adversary proceeding"). The C85 counter-claim alleges, *inter alia,* causes of actions for breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, unfair business practices, and misappropriation of trade secrets. This court concludes that any attorneys' fees incurred by the trustee in litigating the C85 adversary proceeding must derive from the causes of action in the counter-claim and not by reason of ESR's violation of the automatic stay on October 31, 1985.

(f) *Preclusive Effect of Bankruptcy Preliminary Injunction.*

■ The trustee argues that this court's finding at the hearing on the motion for the preliminary injunction on January 13, 1986, that the filing of the Illinois action was "in violation of the automatic stay", precludes ESR from further consideration and review by this court in this summary judgment motion.

This court finds the trustee's argument without merit. This court's order granting the preliminary injunction was interlocutory and does not preclude reconsideration by the trial court of those findings. Such findings represent only a prediction as to the likelihood of how the issue in question will be resolved. *Canez v. Guerrero*, 707 F.2d 443, 446 (9th Cir.1983); *Hunter Doug-*

*las Inc. v. Sheet Metal Workers International Association, Local 159,* 714 F.2d 342, 346 (4th Cir.1983).

(g) *Affirmative Defenses.*

The trustee also requests that this court find that ESR's first (no improper use of process), second (privilege), fourth (justification), fifth (actions based on bona fide claims and claims set forth in the Second Amended Counter Claim in the C85 adversary proceeding), seventh (estoppel), and eighth (unclean hands) affirmative defenses do not constitute valid defenses to the trustee's first claim for relief based on violation of the automatic stay.

The trustee also argues that the ninth affirmative defense (lack of subject matter jurisdiction) fails as to the trustee's first claim for relief for violation of the automatic stay; and that the tenth affirmative defense (that this adversary proceeding be dismissed pending the C85 adversary proceeding) is without merit since it does not bar the instant proceeding. ESR submits that the defenses asserted are proper since the defenses are the basis of counter-claims in the 1985 action and that therefore, pending resolution of the 1985 adversary proceeding, the court should not rule on the trustee's claims for relief in this adversary proceeding.

ESR claims the following defenses:

1. *First Affirmative Defense*—"No Improper Use of Process". ESR's first affirmative defense apparently relates to the trustee's Second Claim for Relief (Abuse of Process). To the extent this affirmative defense applies to the relief from stay violation, the trustee's motion is granted, since the defense is irrelevant to violation of the automatic stay.

2. *Second Affirmative Defense*—"Absolute Privilege". This shall be stricken as to the trustee's First Claim for Relief since it is irrelevant.

■ 3. *Fourth Affirmative Defense*—"Justification". Based on the alleged wrongful theft and misappropriation of the World Series game by Cinematronics. Trustee argues that any alleged miscon-

duct of the trustee and debtor do not provide defendants with an excuse to take the law into their own hands and disregard bankruptcy law and the automatic stay under § 362. This court agrees that defendants' focus upon the trustee's alleged misconduct as a defense to the violation of the stay is misplaced.

The great weight of authority indicates that whether a party believes in good faith that it had a right to the property is not relevant to finding liability for violation of the stay. *In re Bloom*, 875 F.2d 224, 227 (9th Cir.1989). A creditor's violation of stay may be willful even if the creditor believed itself justified in taking an action found to be violative of stay. The creditor takes a calculated risk where it undertakes to make its own determination of what the stay means. *In re Gray*, 97 B.R. 930, 936 (Bankr.N.D.Ill.1989). To disagree with Theodore Roosevelt, at least when the automatic stay is concerned, it is far better to be a "timid soul" who seeks a court determination of the limits of the stay, rather than to fail "while daring greatly".

■ 4. *Fifth Affirmative Defense*— That the actions of ESR were based on a bona fide claim for breach of contract, fraud, breach of fiduciary duty, breach of implied covenant of good faith and fair dealing, unfair competition and negligence on the bankruptcy trustee's part and accordingly were authorized pursuant to 11 U.S.C. § 323. Section 323 provides:

(a) The trustee in a case under this title is the representative of the estate.

(b) The trustee in a case under this title has capacity to sue and be sued.

Pursuant to § 323(b), a trustee may intervene as the estate's representative under § 323(a) as a plaintiff or defendant in suits pending at the time of bankruptcy as well as initiate actions on behalf of the estate. 2 *Collier on Bankruptcy* para. 323.02[1] at 325–6 (15th ed. 1989).

The trustee was not named as a defendant in the state court action, and only became a part of the action by his own motion to intervene. The court fails to see how § 323, which states that a trustee may be sued, could authorize ESR's state court actions, when ESR failed to name the trustee in its complaint. Section 323 is not an absolute grant of authority to file suit against a trustee, but must be read in conjunction with 28 U.S.C. § 959. As this court has previously found that 28 U.S.C. § 959 does not apply to the facts in this case, thereby permitting ESR to maintain the state court action, this defense shall be stricken as to the trustee's first claim for relief.

5. *Seventh Affirmative Defense*—"Estoppel".

*Eighth Affirmative Defense*—"Unclean Hands". Both of these defenses claimed by ESR are based on the alleged breach by Cinematronics of the confidential non-disclosure agreement and alleged concealment and fraudulent use of ESR's ideas for the use and the development of the World Series game. ESR relies heavily on the case of *Matthews v. Rosene*, 739 F.2d 249 (7th Cir.1984) for the proposition that the court cannot ignore equitable defenses to claimed violations of the stay. In *Matthews*, the court invoked the doctrine of laches to affirm the dismissal of a debtor's petition for violation of stay. ESR argues that if laches is a good defense to a violation of the automatic stay, then other equitable defenses such as unclean hands and estoppel should also be available defenses to alleged violations of stay.

While a bankruptcy court, as a court of equity, must be guided by equitable principles in exercising its jurisdiction, it does not follow that such principles may be applied without limitation. The *Matthews* court utilized two limiting factors in reaching its decision to "allow equitable considerations to override the serious concerns" of § 362. *Id.* at 252. First, the equitable considerations weighed heavily in favor of the creditor. Second, the debtor bore some responsibility for creating the problems by initiating the state court proceedings which were the subject of the stay violation when the creditor, in response, filed a counterclaim. The court appeared to object to the debtor getting the proverbial "extra bite at the apple" by taking his chances in state court, losing, then seeking the protection of

the bankruptcy laws to avoid the state court order after an unreasonable and inexcusable delay.

This court agrees that equitable principles may, in some circumstances, be applicable to a claimed violation of stay. However, the existing case law indicates that there must be compelling equitable considerations which outweigh the court's need for enforcement of an orderly administration of the bankruptcy estate. Such determination must be made on a case by case basis to insure that there is no suffocation of the stay's intended policy. Nor must this court allow "an *ad hoc* equitable exception to swallow a well-established legal rule". *In re Smith,* 86 B.R. 92, 96 (W.D.Mich.1988). The court must find that equitable considerations weigh heavily in favor of the defendants and that the trustee bears some responsibility for creating the problems before specifically balancing the equities of the case.

A survey of existing case law indicates that courts are more apt to apply equitable considerations where the creditor was without notice or actual knowledge of the bankruptcy petition, and the debtor remained "stealthily silent" in order to misuse the automatic stay. *Id.* at 96. Such a scenario arises when the creditor is unaware of the bankruptcy proceeding and the debtor, with knowledge of the creditor's intended action, remains silent to allow the creditor to violate the stay. The other common scenario is where the debtor initiated state court action as in *Matthews, supra.* Neither scenario is present in this proceeding.

This court is not required to examine the specific merits of the unclean hands and estoppel arguments as the court finds that under the particular circumstances of this case:

1) Defendants had actual knowledge of the bankruptcy proceeding, and at the time of Colton's "discovery" of the production of the "World Series" game and his learning of the AMOA trade show, there existed sufficient opportunity to seek a judicial determination of the scope of the automatic stay in this court. The facts do not indicate that equitable considerations weigh heavily in favor of defendants. Sufficient remedies were available to adequately protect defendants' interests without resorting to a violation of the stay.

2) The trustee did not remain "stealthily silent" while the defendants took action in violation of the stay. In fact the trustee was unaware of defendants actions until after the filing of the state court action. When the trustee learned of the state court action, he immediately moved to intervene in the case and dissolve the TRO. ESR vigorously opposed the actions of the trustee both to dissolve the state court TRO, and to obtain a TRO in this court.

In light of the foregoing, the equitable considerations do not weigh heavily in favor of the defendants, nor did the trustee bear some responsibility for creating the problem (i.e. file a state court action) so as to require this court to take a more detailed examination of the specific equitable defenses raised in a balancing of the equities. The seventh and eighth affirmative defenses shall be stricken as to the trustee's first claim for relief.

6. *Ninth Affirmative Defense*—"Lack of Subject Matter Jurisdiction". The court has previously found that it has jurisdiction over this adversary proceeding as to the first claim for relief.

ESR argues that this court does not have jurisdiction over the adversary proceeding because it involves non-core claims for relief for abuse of process and intentional interference with prospective business advantage.

This court concurs with the conclusion of the bankruptcy court in *In re Blackman,* 55 B.R. 437 (Bankr.D.D.C.1985) which held that when a adversary proceeding is in part a core proceeding and part non-core, the bankruptcy court may find that the entire proceeding is core and that it has jurisdiction to hear and determine the entire proceeding where the core aspect of the case heavily predominates and the non-core aspect is insignificant. *Blackman, supra* at 443.

A careful review of the trustee's complaint reveals that all three claims for relief relate to facts which occurred commencing on the morning of October 31, 1985 and terminated approximately one day later on the morning of November 1, 1985, when the trustee obtained a restraining order from this court against ESR prohibiting it from renewing, extending or otherwise perpetuating the Illinois TRO. The damages prayed for by the trustee directly emanate from the debtor's alleged lost opportunity to sell significant quantities of the "World Series" video game at the AMOA trade show by reason of ESR's procurement of the Illinois TRO. The prayer for compensatory damages of $100,000 and punitive damages of an additional $100,000 plus attorney's fees and costs incurred in seeking to dissolve the Illinois TRO and attorney's fees and costs incurred by the trustee in bringing his complaint for preliminary and permanent injunction once again relate to the violation of the automatic stay.

Accordingly, this court concludes that the entire adversary proceeding is a core proceeding.

■ 7. *Tenth Affirmative Defense*— "The trustee's complaint should be dismissed because it is duplicative of the trustee's claim for relief filed in the C85 action".

The trustee's "C85 action" involved the trustee's claims for preliminary and permanent injunctive relief, ESR's second amended counter-claim and the trustee's third party claim against Colton based upon 18 U.S.C. § 1962, et seq. (Racketeer Influenced and Corrupt Organizations Act). ESR states seven claims for relief alleging breach of contract, breach of implied covenant of good faith and fair dealing, fraud, breach of fiduciary duty, negligence, misappropriation of confidential information and trade secrets, and unfair competition and unfair business practice.

Although the C85 and C86 adversary proceedings filed by the trustee involve some similar facts and events, the trustee's request for preliminary and permanent injunctive relief in the C85 adversary proceeding did not include any claims for damages for violation of the automatic stay, abuse of process and interference with prospective business advantage. The court also notes that defendants PIR and Colton are parties in the instant proceeding but not in the C85 adversary proceeding.[5]

Finally, although ESR's seven claims for relief in its C85 counterclaim are substantially related to its equitable affirmative defenses plead, this court has previously concluded that the defenses are not relevant to the trustee's claim for damages emanating from ESR's violation of the automatic stay. Accordingly, ESR's tenth affirmative defense is stricken.

### CONCLUSION

This Memorandum Decision constitutes findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052. Counsel for the trustee is directed to file with this court an order in conformance with this Memorandum Decision within ten (10) days from the date of entry hereof.

---

5. The trustee's third party claim against Colton    was dismissed by order of this court.