In re TELEGROUP, INC., Debtor.

Bankruptcy No. 99–31527 (WFT).

United States Bankruptcy Court,
D. New Jersey.

Aug. 11, 1999.

Bruce Buechler, Ravin, Sarasohn, Cook, Baumgarten, Fisch & Rosen, Roseland, NJ, Counsel for debtor.

James Stempel, Kirkland & Ellis, Chicago, IL, Co–Counsel for debtor.

Tod Chasin, Friedman & Siegelbaum, Roseland, NJ, for Cygnus Telecommunications Technologies, LLC.

## OPINION

WILLIAM F. TUOHEY, Bankruptcy Judge.

This matter comes before the Court upon the Motion of Cygnus Telecommunications Technologies, LLC ("Cygnus") for an Order Granting Relief from the automatic stay pursuant to section 362(d) of the Bankruptcy Code permitting Cygnus to commence and prosecute against the debtor, Telegroup Inc. ("Debtor" or "Telegroup"), an action for infringement ("the Infringement Suit") of a patent held by Cygnus relating to a system and method for what is commonly referred to, and discussed more thoroughly herein, as "International Call–Back" ("the Patent"). Specifically, as originally filed, the Motion requested relief from the automatic stay to enable Cygnus to file and serve a Complaint (substantially in the form annexed as Exhibit A to the Motion), in a Federal District Court where venue is proper, which Infringement Suit would seek to enjoin alleged "infringing activity" pending final adjudication of Cygnus' causes of action and to take all necessary action relating to the prosecution of the Infringement Lawsuit other than the actual enforcement of a money judgment against the debtor's assets.

Subsequently, as a result of this Court's approval pursuant to section 363 of the Bankruptcy Code of a May 26, 1999 auction sale of a significant portion of the debtor's business assets, including the debtor's International Call–Back business, to Primus Telecommunications, Inc. ("Primus"), it was conceded by counsel for Cygnus that the injunction request as to the debtor's business would be deemed "moot." Pursuant to a June 8, 1999 letter to the Court by Cygnus' counsel, Cygnus now requests a more limited form of stay relief indicating that such relief is necessary "only to permit it to file an action for damages arising on or after the date that the patent was issued, and for related remedies." Thus, as confirmed by its counsel, at this juncture in the proceedings, Cygnus seeks only to pursue an action for damages arising from and after the date of the post-petition registration of the Patent until the May 26th sale of the debtor's assets.

In the alternative, Cygnus requests an Order pursuant to 28 U.S.C. § 959(a), declaring the automatic stay does not apply to an action to be commenced by Cygnus to enjoin the debtor's post-petition infringement of the Patent.

The debtor filed opposition to the within Motion on May 25, 1999 and June 18, 1999. The Court heard oral argument on July 13, 1999, at the conclusion of which it reserved decision.

Matters concerning requests to terminate, annul or modify the automatic stay, and matters concerning the allowance or disallowance of claims against the estate as

well as other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor relationship, are core proceedings as defined by the United States Congress in 28 U.S.C. § 157(b)(2)(G), (B) and (O) respectively. The within Opinion constitutes this Court's findings of fact and conclusions of law pursuant to Fed.R.Bankr.P. 7052.

## FINDINGS OF FACT

On February 10, 1999 the debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code and continues to manage its affairs as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108. At the hearing held on July 13, 1999, debtor's counsel stated to the Court that it was the debtor's intention to file a liquidating plan in the Chapter 11.(T5). The debtor is a publicly-held holding company which, through itself and its direct and indirect wholly-owned subsidiaries, provides a substantive range of telecommunication services on a global basis. Among the services provided by the debtor is the service referred to herein as International Call–Back [1] which, as defined, "allows a customer to take advantage of the lower long distance telephone call rates in one country when calling from or to another country with higher rates." (Debtors' Objections filed May 25 and June 18, 1999). Amongst its business endeavors, it is undisputed that the debtor generated revenues from the sale and provision of long distance telephone service, including International Call–Back to retail customers.

On March 16, 1999, after the debtor had filed for bankruptcy, the Patent (number 5,883,964) describing International Call–Back was issued in favor of Cygnus. For purposes of the Motion *sub judice*, Cygnus maintains that the debtor "has and continues post-petition to generate substantial revenues from ... the Cygnus Patented system and method for International Call–Back without Cygnus' consent." (Motion of Cygnus, filed may 10, 1999, para. 3). Cygnus further indicates that by a letter dated March 26, 1999, Cygnus notified the debtor of the Patent and alleged infringement and that the debtor has not responded to Cygnus' demand. For its part, at the July 13th hearing, counsel for the debtor argued that the present actions of Cygnus must be viewed against the proper background. That is, since obtaining its patent, Cygnus has allegedly served numerous telecommunication carriers in the United States with notice that it intends to initiate similar patent infringement suits against them. (T20).

Significantly, the Court has reviewed a Proof of Administrative Claim filed by Cygnus dated June 14, 1999 in the amount of $1,200,000 relating to the alleged patent infringement from March 16, 1999, the date of the issuance of the patent through the present. In addition, from its review of Exhibit A to the Cygnus Motion, the Court notes that in its potential Infringement Suit, Cygnus has included a jury demand.[2]

---

1. With an International Call–Back system, counsel for Cygnus explains, "a subscriber to a service is assigned an identifier by a service provider. When the subscriber desires to make a telephone call to a called party the subscriber places a call to the service provider indicating the subscriber's identifier then terminates the call. The service provider looks up the identifier assigned to the subscriber in a database to determine the subscriber's telephone number and automatically calls the subscriber back at the subscriber's telephone number. The subscriber then enters the telephone number of the called party. The service automatically calls the called party on a second outgoing trunk and, when the

called party answers, connects the caller to the called party telephonically." (Motion of Cygnus for Relief from the Automatic Stay, filed May 10, 1999, para. 2.)

2. As a parenthetical note, to the extent that the litigation which Cygnus seeks to file encompasses a jury demand, by the filing of its Proof of Claim, Cygnus has submitted to the jurisdiction of this Court and waived its Seventh Amendment right to trial by jury. On this point, the Third Circuit Court of Appeals opined in *Travellers International AG v. Robinson*, 982 F.2d 96 (3rd Cir.1992), cert. denied, 507 U.S. 1051, 113 S.Ct. 1946, 123 L.Ed.2d 651 (1993) in discussing the Supreme

## DISCUSSION

The question of obtaining an injunction having become moot in light of the section 363 sale of the debtor's assets and consequent cessation of substantially all of the debtor's business, the limited issues before the Court are first, whether, under the circumstances presented, "cause" exists to lift the automatic stay pursuant to section 362(d) of the Bankruptcy Code so as to allow Cygnus to file its Infringement Suit against the debtor seeking monetary damages for alleged post petition infringement of its patent. In the alternative, assuming the Court finds in the negative as to the above, the second, and somewhat more complex issue involves the question of whether or not, pursuant to 28 U.S.C. § 959(a), as cited by counsel for Cygnus, the debtor in possession may be sued for post-petition patent infringement.

The Court having reviewed the record in this matter including the cases cited by counsel and independently researched by the Court, as well as the arguments of the parties at the July 13th hearing, finds for the reasons which follow, first that with the debtor's assets having been sold and the alleged infringing activity by the debtor having therefore ceased, Cygnus has failed to satisfy its initial burden of proof that "cause" exists pursuant to 11 U.S.C. § 362(d)(1) at this juncture in the proceedings, to lift the automatic stay so as to allow the contemplated Infringement Suit to proceed against the debtor in another forum. As found above, an administrative claim for post petition damages stemming from the alleged infringement of Cygnus' patent has in fact been filed before this Court, and can be challenged by the debtor. Second, having found that the proper remedy for Cygnus lies in the adjudication of the validity and merit of its administrative claim, the Court, for the reasons which follow, rejects on equitable grounds, Cygnus' alternative contention that 28 U.S.C. § 959(a) may be utilized to sue the debtor-in-possession without leave of this Court, with respect to its post petition activity.

In sum, as to Cygnus' ability to pursue its rights with respect to the less than 3 month narrow window of time in which the debtor is alleged to have engaged post-petition in patent infringement, this Court holds that the proper remedy lies in the form of a challenge to the proof of administrative claim, should one be filed by the debtor, and *not* as requested by Cygnus, in the initiation of an independent lawsuit against the debtor in another forum. The above notwithstanding however, the Court notes the obvious caveat that Cygnus remains free to pursue its patent infringement claim against Primus and/or other non-debtor defendants in a separate litigation in an appropriate forum should it see fit to do so.

### a. The Stay Relief Motion

■ One of the most fundamental tenets of Bankruptcy law, Section 362(d) of the Bankruptcy Code provides in pertinent part:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) *for cause,* including the lack of adequate protection of an interest in property of such party in interest; 11 U.S.C. § 362(d)(1) (emphasis added).

Court decisions in *Langenkamp v. Culp,* 498 U.S. 42, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990) and *Granfinanciera v. Nordberg,* 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989):

The Supreme Court's holdings in *Granfinanciera* and *Langenkamp* leave no doubt that the equitable jurisdiction of the bankruptcy court is exclusive when its jurisdic-

tion has been invoked by the filing of a claim. Where as in this case, a creditor has filed a claim, even though the claim is couched in protective language and is contingent, the creditor has submitted to the bankruptcy court's equitable jurisdiction and waived any seventh amendment right to a jury trial. 982 F.2d at 100.

Initially, on a motion to lift or modify the automatic stay, the burden of proof is a shifting one. That is, section 362(d)(1) requires an *initial* showing of "cause" by the movant, while section 362(g) places the burden of proof on the debtor for all issues other than "the debtor's equity in property." *In re Holly's, Inc.*, 140 B.R. 643 (Bankr.W.D.Mich.1992); *In re Drexel Burnham Lambert Group, Inc.*, 1990 WL 302177, 6* (Bankr.S.D.N.Y.1990).[3]

As recognized by Professor Collier, although lack of adequate protection is the most common basis for granting relief for cause, other bases exist for a cause finding as well. *Collier on Bankruptcy*, section 362.07[3][a] (15th ed.). As noted, "relief may also be granted when necessary to permit litigation to be *concluded* in another forum, particularly if the nonbankruptcy suit involves multiple parties or is ready for trial." Id (citing *inter alia, In re Castlerock Properties*, 781 F.2d 159 (9th Cir.1986)) (emphasis added). In addition, other courts have found that actions which are only remotely related to the bankruptcy case, or which involve the rights of third parties often will be permitted to proceed in another forum. Id. (Citing *Sovran Bank, N.A. v. Anderson*, 743 F.2d 223 (4th Cir.1984); and *Pursifull v. Eakin*, 814 F.2d 1501 (10th Cir.1987)).

In support of its motion to lift the stay, Cygnus, relying primarily on *In re Video Cassette Games, Inc.*, 108 B.R. 347, 349 (Bankr.N.D.Ga.1989) cites a benefit/detriment analysis and the following factors as most often referred to by bankruptcy courts when determining whether or not to allow non-bankruptcy litigation to continue in another forum:

whether (a) any great prejudice to either the bankruptcy estate or the debtor will result from continuation of the civil suit, (b) the hardship to the [movant] by maintenance of the stay considerably outweighs the hardship to the [non-mov-

ing party], and (c) the [movant] has a probability or prevailing on the merits.

Upon review, this Court too has found several decisions in which this balancing of interests analysis has been cited and employed by courts in order to make a determination of "cause" for purposes of stay relief pursuant to section 362. *In re Maurice*, 167 B.R. 114 (Bankr.N.D.Ill.1994) (finding of "cause" existed to lift the automatic stay to allow a *pending* appeal to continue where no prejudice would result to the debtor or estate and hardship to creditor considerably outweighed prejudice). In *In re Holly's Inc.*, 140 B.R. at 686, the Court summarized its position by stating,

Some courts have developed a balancing test to determine whether "cause" exists. In determining whether or not cause exists, the bankruptcy court must balance the inherent hardships on all parties and base its decision on the degree of hardship and the overall goals of the Bankruptcy Code. Because the stay is an automatic injunction, some consideration of balancing of harms is appropriate.

In addition, Courts have further noted that estimations of "cause" warranting stay relief intentionally involve a "broad and flexible inquiry", which permits the bankruptcy court, as a matter of equity, to respond to inherently fact-sensitive situations. *In re Bell*, 215 B.R. 266 (Bankr. N.D.Ga.1997) (finding that where the state had commenced prepetition a civil forfeiture proceeding against a debtor's residence, "cause" existed to lift the stay for limited purpose of litigating property forfeiture in state court); *In re Holly's Inc.*, 140 B.R. at 686 (indicating that "There are a multitude of reported decisions discussing relief from the stay for 'cause.' The decisions are fact intensive and, except for the balancing test, generally offer no pre-

---

**3.** If the movant however fails to make an initial showing of cause, courts have denied relief without requiring any showing from the debtor that it is entitled to continued protection. *In re Holly's Inc.*, 140 B.R. at 683.

cise standards to determine when 'cause' exists to successfully obtain relief from the stay."). Finally, although this Court was able to find cases which allowed lifting of the automatic stay upon a showing of "cause" pursuant to section 362(d) in order to allow litigation *already commenced* against a debtor prepetition to *proceed,* the Court was unable to find a single reported decision amongst the approximately twenty decisions researched on this point, wherein "cause" was found to exist sufficient to allow for the *initiation* of a lawsuit post-petition against the debtor, such as is requested in the case *subjudice.*

As applied to the facts herein, the Court notes that the majority of the arguments put forth by Cygnus in support of its lift stay motion related to the status of the debtor *prior to* the May 26th sale of the debtor's assets to Primus, and/or relate to the previously requested injunction. Both of these arguments are now conceded to be moot in light of the asset sale and the cessation by the debtor of the alleged infringing activity. At the July 13th hearing, counsel for Cygnus indicated that since the relief now being requested was considerably more narrow, that is, Cygnus is currently seeking only to "liquidate a post-petition claim", all Cygnus is requesting of the Court at the present time, is a "protective declaration that in fact, the automatic stay does not apply." (T7). In support of its position in this regard, Cygnus cites *Voice Systems and Services, Inc. v. VMX, Inc.,* 26 U.S.P.Q.2d 1106, 1992 WL 510121 (N.D.Okla.1992) wherein the Court found that 28 U.S.C. § 959(a) applied to prevent a preliminary injunction action against the debtor's patent infringement, indicating that "the relief sought [by the plaintiff] does not involve prepetition claims, but only seeks to enjoin post-bankruptcy petition alleged acts of patent infringement." *Id.* at *10.

Finally, with respect to its request to either lift the stay and/or find the automatic stay does not apply herein, counsel for Cygnus argues that it is necessary to pursue this litigation in another forum, since the suit contemplates multiple defendants. That is, Cygnus not only has an alleged patent infringement claim against the debtor, but also against Primus and possibly other entities using the technology without a license. (T11). Related to this point is Cygnus' concern that the issue of the validity and scope of its patent infringement claim need not be litigated in both the District and the Bankruptcy Courts simultaneously.(T13).

With respect to the lift stay Motion currently before it, using the balancing of interests analysis discussed above, this Court must weigh factors favoring denial of such motion against the benefits to be gained by Cygnus should this Court be inclined to allow the requested litigation to proceed. Specifically, first and foremost, in favor of the debtor, the Court weighs the fact that this litigation in its present posture concerns a fixed claim of $1,200,000 being asserted against the fixed assets of this liquidating Chapter 11, mindful of the fact that there is no ongoing infringement activity against which Cygnus may proceed. Second, unless circumstances compel it to find otherwise, this Court is unwilling to forestall the distribution of assets to claimants of the liquidating Telegroup Chapter 11 Estate for a potentially indefinite period of time, while Cygnus *initiates* a multifaceted patent infringement litigation against the debtor and other defendants in another forum. In this regard, the Court specifically finds speed, finality as well as cost are important considerations weighing in favor of the debtor. Finally, as a matter of practical concern, the Court recognizes that, pursuant to 11 U.S.C. § 502, Cygnus' Proof of Administrative Claim as filed is *presumptively valid* until challenged by the debtor. *In re King Street Investments, Inc.,* 219 B.R. 848 (9th Cir. BAP 1998); *In re Klassen, Jr.,* 227 B.R. 187 (Bankr.D.Kan.1998).

In conducting its balancing of interests analysis as applied to the facts herein, as a counterpoint to the above factors which,

the Court finds weigh heavily in favor of the debtor, the Court has considered Cygnus concern that it not be forced to proceed against Telegroup and other non-debtor defendants in separate forums. On balance, however, the Court finds this lone remaining argument, in favor of lifting the stay, *albeit* of some merit, insufficient in and of itself, to sustain a finding of "cause" in light of the strong countervailing arguments put forth by the debtor.

In reaching its decision herein, the Court has specifically reviewed the decision of the Bankruptcy Court for the Eastern District of New York in the case of *General Oil Distributors, Inc.*, 33 B.R. 717 (Bankr.E.D.N.Y.1983) wherein the Court held in a Chapter 11 case, that Charter International Oil Company, a supplier of oil, was not entitled to relief from the automatic stay to permit a pending state court action to proceed to trial against the debtor, given the fact that lifting the stay would have a detrimental impact on the Chapter 11 Estate, and significantly, because the supplier would have *the opportunity to prove the validity of its claim* against the debtor at a hearing to consider the debtor's objection to the claim.

In finding in favor of the debtor in that proceeding, the Bankruptcy Court reviewed the legislative history of section 362(d) citing Congress' instruction that "A desire to permit an action to proceed to completion in another tribunal may provide ... cause." 33 B.R. at 717 (citing H.R.Rep.. No. 595, 95th Cong., 1st Sess. 343 (1977)). However, the *General Oil* Court cautioned, "Congress certainly did not intend that a party's mere *desire* would constitute cause for modifying the stay. Congress intended that the automatic stay be lifted where the pending bankruptcy case would not be adversely affected." Id. at 717. (emphasis added). In balancing the equities in that case the Court specifically stated:

> While there may be equities lying in favor of Charter's request, the court finds that allowing Charter to proceed

against General Oil in the State Court Action would have a detrimental impact on General Oil's efforts to formulate and solicit acceptances for a plan, and would lessen the funds available for General Oil's creditors. *A relatively long out-of-state trial of the several parties in the State court action would be far more expensive than a hearing in the near future in this court on an objection to Charter's claim....* Charter presents several "considerations" to establish cause for granting relief from the automatic stay. What merit that exists in these considerations, however, is either offset by other considerations or simply outweighed by the detrimental impact on General Oil's estate.... First, Charter states that the State Court Action can be certified for trial, however, its actual commencement and its conclusion could take a relatively long time. Second, Charter asserts that the State Court Action will not hinder General Oil's reorganization case. This assertion clearly ignores the potential harmful ramifications leaving one of the largest unsecured claims contingent for any length of time could have upon claim holders' approval of the debtor's plan. Furthermore, Charter fails to note the inherent expense to General Oil in defending an out-of-state multi defendant trial.... *Therefore, the potential harm to the debtor of greater legal fees and other expenses associated with defending a multi-party out-of-state court action is a strong countervailing factor.* In addition, considering that General Oil's advance efforts to formulate and gain approval of a plan could be seriously threatened by a lengthy trial on a substantial claim, the court must leave the stay intact. *Id.* at 719. (emphasis added)

In the case *subjudice*, the potential prejudice to the debtor/Telegroup as cited earlier herein, is apparent in this non-operating and essentially liquidating Chapter 11, while an overriding benefit to the appli-

cant/Cygnus is not at all clear. Consequently, for the reasons aforestated, Cygnus' Motion, to the extent that it seeks to lift the automatic stay to litigate its post-petition patent infringement claim against the debtor, be and the same hereby is denied.

### b. 28 U.S.C. section 959(a) Exemption From Automatic Stay

■ Next the Court addresses the somewhat more complex and interesting issue raised by Cygnus concerning its ability to pursue an action against the debtor in possession, *irrespective* of the automatic stay, pursuant to 28 U.S.C. § 959(a) which provides:

*Trustees and receivers suable; management; State laws*

(a) Trustees, receivers or managers of any property, including *debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property.* Such action shall be *subject to the general equity power of such court* so far as the same may be necessary to the ends of justice, but this shall not deprive a litigant of his right to trial by jury. (emphasis added)

About this section, it has been noted that, as a general rule, "a nondebtor party is *not* required to obtain leave of the bankruptcy court before filing suit against an operating trustee or a debtor in possession, provided that the lawsuit is based on an act or conduct ... by the debtor in possession in carrying out business in connection with the debtor's property." *Collier on Bankruptcy*, section 10.01 (citing the leading case of *Reading Company v. Brown*, 391 U.S. 471, 484, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968)). This section, pertaining to post-petition activities of a debtor in possession or trustee allows, under certain circumstances, suit against the debtor in possession or trustee, without leave of the

court. *In re Baptist Medical Center of New York*, 80 B.R. 637 (Bankr.E.D.N.Y. 1987).

Moreover, it has been recognized that "A tension appears to exist between the automatic stay, under section 362 of the Bankruptcy Code, and the right to sue the operating trustee or debtor in possession without leave of the bankruptcy court, under 28 U.S.C. § 959(a)." Id. at section 10.01, 10–2. *Collier* goes on to reason:

While 28 U.S.C. § 959(a) reserves to the bankruptcy court the authority to issue injunctive relief in favor of the trustee or debtor in possession, the primary thrust of the statute is to relieve the plaintiff from the burden of having to seek leave from the bankruptcy court before filing an action. Moreover, the defendant trustee or debtor in possession bears a substantial burden of proof in persuading the bankruptcy court that an injunction should be issued against the prosecution of the plaintiff's claim. Id.

While the overall view is that the case law under section 959(a) "demonstrates a policy of favoring plaintiffs, several courts have held that to allow the *continuation*[4] of lawsuits against a debtor in possession in another forum would be disruptive to the reorganization effort and as a result, have enjoined the continuation of these suits." Id. As further noted by Collier, in discussing the relevant factors to be considered when making a determination as to the potential application of a suit against a debtor in possession under 28 U.S.C. § 959(a):

... the bankruptcy court has the power to exercise its discretion to enjoin the continuation of the state suit. In exercising its discretion, the court should consider the public policy behind section 959, the burden that would be placed on the plaintiff to litigate the suit in the bankruptcy court, and whether the con-

---

4. The court reiterates that in the present context, we are distinguishing between *continua-* *tion* as opposed to *initiation* of a lawsuit against the debtor in possession.

tinuation of the suit elsewhere would unduly impede, burden or interfere with the progress of the reorganization case. Id. at section 10.01, 10–3. (emphasis added).

In coming to its determination herein, and rejecting its application to the facts *subjudice,* the Court has thoroughly reviewed the caselaw concerning section 959(a). Two cases, one cited by counsel for Cygnus, *In re Voice Systems and Services, Inc.,* 1992 WL 510121, and one cited by the debtor, *In re Cinematronics,* 111 B.R. 892 (Bankr.S.D.Ca.1990) discuss the availability of 28 U.S.C. § 959(a) to a request for an injunction regarding alleged post-petition patent infringement on the part of the debtor. While the *Voice Systems* Court allowed for the application of section 959(a) since it found that the relief sought did not involve pre-petition claims, but only sought to enjoin post-bankruptcy alleged acts of patent infringement, the *Cinematronics* Court conversely held that the applicant's reliance upon section 959(a) was "misplaced" insofar as it had not merely prayed for damages in its State Court complaint but rather sought a temporary restraining order against the debtor. The applicant's action of obtaining a temporary restraining order and then resisting its dissolution by the trustee, was in the *Cinematronics* Court's view, an attempt to obtain possession of property of the estate in violation of the automatic stay. In this latter case, the Court then reasoned that "section 959(a) should not be construed to permit suits that aim to establish adverse rights in the estate's property or otherwise interfere with the trustee's control and management of the estate." 111 B.R. at 897.

As applied to the facts herein, the Court notes the important distinction that all parties concede that at the current juncture in these proceedings, there is no longer a request for an injunction to be filed against the debtor, but rather, Cygnus only seeks permission to file suit for post-petition damages in another forum regarding the three month window of time in which the debtor is alleged to have engaged in patent infringement. While, the *Cinematronics* decision would seem to indicate that, were the applicant there to have merely filed a complaint for monetary damages, as Cygnus claims it may do herein, that such action *would* fall within the scope of its rights under section 959(a)[5], this Court declines to follow such decision. Having found for the reasons elaborated upon at length herein that the proper remedy is for this Court to determine the validity of Cygnus' proof of administrative claim, should such objection thereto be filed by the debtor, the Court exercises its discretion to decline the availability of subsection 959(a), under the general equity powers of the court referenced in the second sentence of the statute.[6]

Moreover, the Court finds support for its decision in the broader caselaw researched by it, surrounding the subsection. Specifically in *In re Television Studio School of New York,* 77 B.R. 411 (Bankr. S.D.N.Y.1987) Bankruptcy Judge Tina Brozman of the Bankruptcy Court for the Southern District of New York, discussed the application of section 959(a) to the debtor in possession's request for a stay of prosecution of a post-petition copyright infringement suit until the debtor's plan was confirmed. Significantly, while noting that the post-petition infringement claim, "by definition", was not protected by 11 U.S.C. § 362, and that therefore it was conceded

---

5. In this regard, the *Cinematronics* Court concluded that the applicant's reliance on 28 U.S.C. § 959(a) was misplaced by stating: "Had ESR merely filed its complaint in the Illinois State court alleging contract and tort claims and praying for damages, this court would concur with ESR's position." 111 B.R. at 897.

6. The second sentence of the subsection specifically provides that its application is "subject to the general equity power" of the court "so far as same may be necessary to the ends of justice." 28 U.S.C. § 959(a).

that the debtor was subject to suit under 28 U.S.C. § 959(a), the Court, at the debtor's request, exercised its discretion under the second sentence of that subsection to stay the prosecution of the claim. 28 U.S.C. § 959(a). In so doing, Judge Brozman noted:

> On its face, this statute seems to be aimed toward conflicting goals. The first sentence allows suit against a debtor-in-possession in a non-appointing court, without leave of the appointing court. The second sentence prevents such suits when "necessary to the ends of justice." These two sentences can, however, be read harmoniously to further the policy behind each. 77 B.R. at 411.

Judge Brozman then reviewed the legislative history of the subsection,[7] and found that:

> The policy behind the second sentence is to limit the seemingly unfettered power to bring suit against a debtor-in-possession, where to do so would significantly interfere with the orderly administration of the debtor's estate. Thus, while it is essential to allow most of these suits to proceed without leave, there will inevitably be instances when to allow a suit of this type would substantially impede the reorganization of the debtor. As a result, Congress provided the second clause of section 959(a) which empowers the appointing court to use its discretion so as to avoid an unjust result. The standard which has been employed under section 969(a) is that the bankruptcy court must "exercise sound discretion [and] find the action would embarrass, burden, delay or otherwise impede the reorganization proceedings." 77 B.R. at 411. (citations omitted).

Accordingly, to the extent that Cygnus' merely seeks to liquidate a post-petition claim for damages arising out of the debtor's alleged patent infringement, and to the extent that pursuant to the first sentence of section 959(a) same may in fact be allowed, the Court exercises its discretion to deny the availability of such subsection to Cygnus under its general equity powers proscribed by the second sentence of 28 U.S.C. § 959(a) for the reasons provided in the within Opinion.

## CONCLUSION

For the reasons stated in the foregoing Opinion, the within Motion by Cygnus to lift the automatic stay pursuant to 11 U.S.C. § 362(d) to initiate litigation against the debtor in another forum regarding alleged post-petition patent infringement be and the same hereby is denied. To the extent that it seeks to do so, the debtor is free to file an Objection to the $1,200,000 Proof of Administrative which in the absence of such challenge remains presumptively valid pursuant to 11 U.S.C. § 502. Moreover, for the reasons set forth herein, this Court, under its general equity powers set forth under the second sentence of 28 U.S.C. § 959(a), denies application of the subsection to the within matter.

7. Judge Brozman noted that the section was enacted for the purpose of enacting the dissent of Justice Miller of the United States Supreme Court in *Barton v. Barbour*, 104 U.S. 126, 26 L.Ed. 672 (1881) wherein he stated that "it is no part of the duty of courts of law to deny to suitors properly before them the trial of their rights, which justice requires and the constitution and the law guaranty." The predecessor to 28 U.S.C. § 959(a) was section 66 of the Judicial Code (1911), 28 U.S.C. § 125 (1940). The first sentence of section 959(a) codifies that dissenting view and ensures that a debtor in possession can be sued in a court other than the appointing one, without leave, for actions arising out of the debtor's business. 77 B.R. at 411.