### In re FRY ROAD ASSOCIATES, LTD., Debtor.

**Bankruptcy No. 1-86-00474.**

United States Bankruptcy Court, W.D. Texas, Austin Division.

Oct. 30, 1986.

Richard Alexander, Austin, Tex., for Fry Road Associates, Ltd.

Irving Sulmeyer, Los Angeles, Cal., for General Elec. Credit Corp.

## MEMORANDUM OPINION

R. GLEN AYERS, Chief Judge.

### I. Summary

This Court has jurisdiction over this matter as a core proceeding pursuant to 28 U.S.C. § 1334 and § 157.

The Debtor is a limited partnership with one asset, a shopping center located in Houston, Texas. That center has three anchor tenants which taken together lease over three quarters of the space. The remaining one-fourth of the leasable area is designated as speculative space for small, non-anchor type stores. This speculative area has a vacancy rate of twenty percent. All rents are being collected by the creditor, General Electric Credit Corporation ("GECC"), under an absolute assignment of rents. *See, In re Fry Road Associates, Ltd.*, 64 B.R. 808 (Bankr.W.D.Tex.1986).

In that earlier opinion, the Court refused Debtor's application for use of cash collateral, finding that the rents were no longer collateral under Texas law and that a *pro tanto* discharge of debt had occurred. Irrespective of the validity of that opinion, the Debtor presently has no income from any source since it is not permitted use of the rents.

The movant in this case, GECC, has alleged that the Debtor has no equity in the property and no prospects for reorganization under § 362(d)(2). Movant has also alleged that the stay should be lifted under § 362(d)(1) for cause, including bad faith filing and lack of adequate protection. After carefully considering the testimony of the witnesses, the Court has determined that the evidence does not clearly demonstrate that there is no equity in the property. Therefore, Movant has not met the burden of proof required under § 362(d)(2) and relief from stay is denied. However, the Court finds that the movant has demonstrated cause including lack of adequate protection and a bad faith filing and therefore the stay will be lifted under § 362(d)(1).

### II. Discussion—Lack of Adequate Protection

As to the issue of cause, the evidence is clear that the property has only a marginal amount of equity. The movant has established (with the addition of allowed attorney's fees under § 506 reflected on the record herein as approximately $182,000.00) that the debt secured by the property is in excess of $11,700,000.00. The appraisal testimony offered by the Debtor, showing a value of $12,400,000.00, must be discounted because the Court finds, as a matter of fact, that the viability of one anchor lease to Stanley Stores, Inc. is highly questionable. The record reflects that all of the parties have contemplated that the lease may ultimately be disputed by the lessee. Loss of this lease would reduce the market value of the property significantly, perhaps as much as $500,000.00. Therefore, it is difficult for the Court to find a substantial equity cushion in this property.

Presuming, however, there is an equity cushion in the property, the Debtor's own appraisals reflect that the property has declined substantially in value during the six month period between the original appraisal and the appraisal submitted in connection with these proceedings. The valuation reflected by the Debtor's own appraisals computes to at least a fifteen percent decline in value per year.

Also as noted above, the entire income from the property has been transferred to GECC in the form of an absolute assignment of rents—a transfer which creates conflicting results. If the Court's prior opinion is correct, this provides some debt service coverage, or works a *pro tanto* discharge of a portion of the debt. It is difficult, however, for the Court to determine the amount of that *pro tanto* discharge and any resulting increase in equity. On the other hand, the absolute assignment of rents leaves the Debtor with no assets to maintain the property and common areas, or to pay for new tenant finishout, insurance, and brokers' commissions on new or replacement leases. Without such services, the value of the absolute assignment of leases (the rental stream) becomes questionable. If the Debtor/Lessor should breach the leases because of an inability to service the leasehold estate, the amount of *pro tanto* discharge is reduced, again leaving the Court with a difficult valuation of the debt discharge and any resulting changes in the equity amount.

In determining the amount of debt reduction, the Court could accept the Debtor's argument that all but two or three million dollars of the total debt has been discharged by the absolute assignment of leases. However the Debtor has shown no evidence of an ability to adequately protect the value of the *pro tanto* discharge, nor an ability to service the remaining debt by securing new or replacement tenants. While the Debtor did proffer some testimony concerning its ability to fund such operations (by personal borrowing by Mr. Lindsey, president of the general partner of the general partner of the Debtor, and from cash advances by Mr. Stanley, a limited partner in the general partner of the Debtor), that testimony certainly does not show adequate protection by either clear and convincing evidence nor a preponderance of the evidence.

With these facts before it, the Court can only conclude that the Movant has shown cause and the Debtor has not proffered adequate protection. Failure to provide maintenance was one ground which justified summary relief from the stay under

§ 362(f) in *In re Montgomery Mall, Ltd.*, 704 F.2d 1173, 1176 (10th Cir.1983), although that case involves other factors, e.g. structural problems. Here, after a full hearing, with no adequate protection shown, it is clear from the facts that the stay must be lifted under § 362(d)(1).

■ Alternatively, the Debtor offered no testimony concerning how the *pro tanto* discharge and/or application of the rental stream would protect the Movant from further precipitous declines in value such as that reflected in the Debtor's two appraisals. This also justifies relief from the stay under § 362(d)(1).

### III. Discussion—Bad Faith Filing

It is axiomatic that a "good faith" standard is required in the filing of any bankruptcy case. *In re Little Creek Development Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986). Absent good faith, the bankruptcy court may lift the automatic stay under § 362(d)(1). *Id.*

This case reflects may of the factors enunciated in *Little Creek* case as factors which should be weighted by this Court in considering whether or not to grant relief from stay for lack of "good faith". Here, as in *Little Creek:*

(1) The Debtor has one asset.

(2) The asset is encumbered by the liens of secured creditors.

(3) There are no employees (all services are performed by other partnerships affiliated with the Debtor).

(4) There is no cash flow because the rents have been completely pledged or alienated.

(5) There is little evidence of other available sources of income to sustain any plan of reorganization or even maintain the property.

(6) There are few unsecured creditors and their claims are small.

(7) The property was posted for foreclosure because of arrearages.

(8) Bankruptcy was the only possibility of forestalling loss of property. *See id.* at 1073.

One of the factors listed in *Little Creek* —the pre-bankruptcy pursuit of state court remedies—appears in a different form in this case. State court remedies were considered and felt to be inadequate. However, other factors not considered in *Little Creek* are present in this case. The evidence clearly shows extensive negotiations concerning refinancing both before and after the bankruptcy filing. (Negotiations ultimately failed when the Debtor could not meet relatively modest requirements for the infusion of new capital into the shopping center project.) Finally, this case contains the elements noted by the Fifth Circuit in *Little Creek* concerning the lack of realistic prospects for reorganization.

 In the context of whether a feasible reorganization is possible, the Court's earlier notation that the standards of § 362(d)(2) were not met should be carefully reconsidered. Section 362(d)(2) requires first a "no equity finding", and that element is not present. Under § 362(d)(2), ability to reorganize is a test to be considered only after the no equity issue. However, the *Little Creek* standards used to evaluate the good faith or bad faith qualities of the Debtor's filing also include consideration of the Debtor's proffer of evidence concerning an effective reorganization. *Id.* at 1074. Here, the Debtor's general partner principal, Mr. Lindsay, testified that he hoped to "hold on to this property long enough to sell the property." In his words, he hoped to hold on to the property long enough so that the market place would recognize the equity which he perceived to exist in the property.

Such an argument cannot be accepted, especially where the Debtor's previous controlling interest was owned by Barnes/Connally Partnership ("Barnes/Connally"), a Texas partnership with potential financial difficulties due to its extensive real estate holdings. Barnes/Connally chose to transfer this asset for one dollar rather than to seek to preserve any such equity by placing the property in a Chapter 11 proceeding. This can only mean that Barnes/Connally determined it would be too difficult to realize or preserve any equity in the property and that transfer for purely nominal consideration was warranted.

Such facts are highly relevant to the Court's consideration of the issue of good faith filing. In this regard, this Court, like the Fifth Circuit in *Little Creek*, would quote the Ninth Circuit Bankruptcy Appellate Panel opinion *In re Thirtieth Place, Inc.*, 30 B.R. 503, 505 (Bankr.App. 9th Cir. 1983):

> The predominant purpose in filing the petition was to prevent foreclosure upon the heavily encumbered property. It must be noted that there was no plan contemplated for the infusion of capital, no gain in managerial expertise, no history of past business conduct, no employees and indeed no current buisness activity on the date of the commencement of the case nor are there any reasonable prospects for the conduct of future business.

*See also, In re Little Creek Development Co.*, 779 F.2d at 1074.

Here, although there is a history of past business conduct and there is current business activity, all of the other factors set forth in *Thirtieth Place* are met. Further, the past and current business conduct as of the date of commencement of the case all indicate that this Chapter 11 proceeding is not viable. *See also, In re Albany Partners, Ltd.*, 749 F.2d 670 (11th Cir.1984).

 This case does not exactly exhibit the so-called " 'new debtor syndrome', in which a one-asset entity has been created or revitalized on the eve of foreclosure to isolate insolvent property and its creditors, exemplifies, although it does not uniquely categorize, bad faith cases." *In re Little Creek Development Co.*, 779 F.2d at 1073. Therefore, that particular fact situation is not necessary for a finding of bad faith.

This case does, however, present a similar transaction, although not one designed to insulate other assets or entities from liability (Barnes/Connally Partnership remains liable on the debt, and Mr. Barnes and Mr. Connally are personal guarantors). The original Debtor, itself a limited partnership, had as its general partner a limited

partnership, Fry Road Partners, Ltd. The general partner of Fry Road Partners, Ltd. was Barnes/Connally Partnership. On the eve of foreclosure, perhaps only to avoid publicity, a shell corporation owned by Mr. Lindsey purchased the interest held by Barnes/Connally. Mr. Lindsey is the senior employee of Barnes/Connally as well as a number of its wholly-owned, incorporated entities.

While there is a "new general partner syndrome", the actual transfer was not of the type described in *Little Creek*, as evidencing a bad faith filing, *id.* at 1073, or in cases such as *In re Yukon Enterprises, Inc.*, 39 B.R. 919 (Bankr.C.D.Cal.1984). *See also, In re Victory Construction Co., Inc.*, 9 B.R. 549 (Bankr.C.D.Cal.1981) (the most quoted case concerning this issue).

▆ Nevertheless, even without the new debtor (or general partner) syndrome, this case does reflect the real and underlying issue which should be the ultimate question in bad faith/good faith cases: Is there abuse of the bankruptcy process? *See,* Ordin, *The Good Faith Principle In The Bankruptcy Code: A Case Study*, 38 Bus. Law. 1795, 1796 (1983).

This case demonstrates abuse of the bankruptcy process because there is absolutely no evidence that the Debtor can benefit from a Chapter 11 filing. The Debtor shows no evidence of (1) ability to sell its asset in order to recover any equity; (2) ability to preserve the asset pending a sale; (3) ability to secure new or interim financing; (4) ability to find new sources of capital; or (5) ability to continue to operations in the deteriorating Houston environment. Evidence concerning any one of these factors, particularly the ability to sell the asset, would have weighed in the Debtor's favor.

Equally important to the Court is the operating entity's stake in the property. The investment of Mr. Lindsey's corporation into the shopping center is minimal. Any benefit accruing from the reorganization to Mr. Lindsey would be a windfall. Among all of the various partnership interests, only the general partner of the Debtor, which has invested one dollar, appeared at Court proceedings in support of the Debtor. These facts (or missing facts), do show abuse of the system. For these reasons, an additional bases for lifting the stay under § 362(d)(1) is presented.

An order consistent with this Memorandum Opinion will be entered on even date herewith.

ORDER LIFTING STAY PURSUANT TO § 362(d)(1)

After considering the arguments of counsel and the evidence in this matter, the Court has determined that the Movant, General Electric Credit Corporation, has met the burden of proof required under § 362(d)(1) and has shown that there is cause for lifting the stay in these proceedings in that the Debtor has failed to offer the movant adequate protection and further because the filing of this bankruptcy petition was a filing in bad faith, all as set forth in the accompanying Memorandum Opinion. It is therefore

ORDERED, ADJUDGED and DECREED that the stay in these proceedings shall be lifted in order to allow General Electric Credit Corporation to pursue its non-judicial foreclosure remedies pursuant to its deed of trust under the laws of the State of Texas.