In the Matter of Otis C. **BELL,**
Irene W. Bell, Debtors.

STATE OF GEORGIA, **Movant,**

v.

Otis C. **BELL,** Irene W.
Bell, **Respondents.**

Bankruptcy No. **N97–11673–WHD.**

United States Bankruptcy Court,
N.D. Georgia,
Newnan Division.

Nov. 13, 1997.

Alan W. Jackson, Glover & Davis, P.A., Newnan, GA, for State of Ga.

Edward R. Downs, Jr., Riverdale, GA, for Debtors.

### ORDER

W. HOMER DRAKE, Jr., Bankruptcy Judge.

Now before the Court in this proceeding is a Motion for Relief from the Automatic Stay by the State of Georgia (hereinafter "the State") and an objection thereto by Otis C. and Irene W. Bell (hereinafter collectively "the Debtors"). Having found this matter to constitute a core proceeding, see 28 U.S.C. § 157(b)(2)(G), having conducted a hearing, and having taken the matter under advisement to consider the post-trial briefs of each party, the Court now shall dispose of the aforementioned Motion in accordance with the following reasoning.

### FACTUAL BACKGROUND

On or about February 21, 1997, agents of the Coweta County Sheriff's Department allegedly purchased fifty dollars ($50.00) worth of powder cocaine from the Debtors at the location of their residence, 2011 Smokey Road, Newnan, Coweta County, Georgia.[1] In view of that purported episode, officers then placed the Debtors under arrest, charging each with violation of the Georgia Controlled Substances Act, O.C.G.A. § 16–13–1, et seq.[2] The State also filed a statutorily-proscribed notice of a forfeiture lien upon the Debtors' residence, and on March 19, 1997, commenced an in rem action for forfeiture of the subject property in the Superior Court of Coweta County. This forfeiture process soon was interrupted, however, by the Debtors' filing a petition under Chapter 13 of the Bankruptcy Code on May 28, 1997.

In the wake of the above-styled case's commencement, the State now has filed a Motion for Relief from Stay, arguing first that its continued pursuit of forfeiture in the Superior Court should enjoy exemption from bankruptcy's automatic stay by virtue of the police and regulatory power exception codified at 11 U.S.C. §§ 362(b)(4) and (5). Assuming that such an exception does not apply to forfeiture measures, however, the State nonetheless contends that the equities of this case dictate that the Debtors should not be allowed to forestall a pending forfeiture action merely by filing for bankruptcy protection. Thus, reasons the State, cause must be found to warrant lifting the automatic stay on its behalf. See 11 U.S.C. § 362(d)(1) (licensing the termination or modification of bankruptcy's automatic stay for cause shown).

Seeking to pierce the veil of civil forfeiture under Georgia law and recast its terms as but a means for revenue collection, the Debt-

---

1. This police operation came only weeks after Mr. Bell's release from incarceration on other drug-related charges. Specifically, in 1992, Bell had pled guilty to three of seven counts for selling controlled substances, leading to his confinement until shortly before the events here at issue.

2. Mrs. Bell has subsequently been released from custody, but Mr. Bell remains incarcerated on the basis of a parole hold. To date, it appears that neither of these Debtors has been indicted for their role in the events of February 21, 1997.

ors firmly challenge the applicability of the stay exceptions found in Code section 362(b)(4) and (5), exceptions which they contend do not apply in the forfeiture context. Likewise, the Debtors assert that equity requires that the stay upon forfeiture remain intact, so that the State may not circumvent bankruptcy's preordained rules of distribution. So framed by the respective contentions of each party, these questions relating to the automatic stay's governance and the appropriateness of relief therefrom shall each be disposed of in turn.

## DISCUSSION

### I. Forfeiture Provisions in Overview.

■ The process of forfeiture, i.e., the uncompensated divestiture of ownership in specific property when it has been used in a manner contrary to sovereign directive, can take either a criminal or a civil form. In the former instance, forfeiture proceeds as an in personam action geared to penalize the criminal conduct of a property's owner.[3] By definition, therefore, criminal forfeiture only may be imposed upon an individual subject to criminal conviction.[4]

In civil forfeiture, by contrast, an in rem action is said to arise against guilty property rather than some guilty person.[5] Thus, forfeiture depends in such instances, not upon an owner's culpability, but instead upon the property's being connected to some criminal act.[6] Likewise, civil forfeiture is said to be proper when the subject property somehow facilitated criminal enterprises.[7]

Given the ever-increasing threat of crime in modern society, law enforcement authorities have come to rely upon each of these forfeiture vehicles as an additional means for stemming the tide of crime.[8] At the same

---

**3.** *See, e.g., United States v. Kingsley*, 851 F.2d 16, 18 (1st Cir.1988) ("[c]ivil forfeiture is an in rem proceeding brought against property either used to facilitate a crime or acquired as proceeds from a criminal venture.... In personam criminal forfeiture, on the other hand, is intended to directly punish persons convicted of a criminal offense by forcing them to forfeit the proceeds obtained as a result of that offense").

**4.** Such in personam forfeiture statutes find their origin in common law, where forfeiture of the property was a consequence of conviction of a crime. *See, e.g., In re Palmyra*, 25 U.S. (12 Wheat.) 1, 14, 6 L.Ed. 531 (1827); *United States v. Long*, 654 F.2d 911, 914 (3d Cir.1981).

**5.** As one commentator has noted when surveying the issue:

Criminal forfeiture is a proceeding in personam, an action against the person. The government must establish criminal culpability before divestiture, as seizure is intended to punish convicted defendants. Because criminal forfeiture is substantially punitive, constitutional protections that attach to criminal proceedings are typically available to criminal forfeiture defendants.

Civil forfeiture, in contrast, is a proceeding in rem, an action against the thing. Generally, a judicial determination of guilt premised on the "taint doctrine" supports such seizure, [as] the thing's association with illegal activity presumably "taints" the property and renders it amenable to seizure. Personal culpability is not at issue, [since] the res itself is the defendant. Courts have traditionally found that in rem divestiture serves substantially "civil-remedial" rather than "criminal-punitive" purposes. Thus, courts routinely hold that the civil posture of asset forfeiture requires substantially less constitutional scrutiny than criminal proceedings.

David S. Romantz, *Civil Forfeiture and the Constitution—a Legislative Abrogation of Rights and the Judicial Response: the Guilt of the Res*, 28 SUFFOLK UNIV. L. REV. 387, (1994) (footnotes omitted).

**6.** Indeed, under Georgia law, an acquittal or dismissal of criminal charges does nothing to preclude civil forfeiture of an individual's property. *See* O.C.G.A. § 16–13–49(v).

**7.** Under Georgia law, for example, property shall be subject to civil forfeiture if it directly or indirectly has facilitated criminal activity. *See* O.C.G.A. § 16–13–49(d); see also *Hinton v. State*, 224 Ga.App. 49, 479 S.E.2d 424 (1996) (an item of property may be forfeited when it is either used by its owner to facilitate the sale of controlled substances or used by an operator to facilitate such sales with the owner's consent).

**8.** As one commentator has noted in surveying forfeiture's increasing level of utility, however:

One criticism of civil forfeiture is that it provides such an attractive financial incentive for law enforcement to seize property; seizure becomes more important than actually fighting drug use or other drug-related crimes. In fact, at least one state, Florida, has appointed a special commission to consider changes to its forfeiture laws in an effort to stop abuses associated with the confiscation of cash. Some critics of civil forfeiture even contend that money is distorting the mission of law enforce-

time, forfeiture also has proven itself to be a lucrative means of secondary revenue, permitting law enforcement agencies to finance their costs of operation and obtain additional resources by using the assets of criminal wrongdoers.[9] Thus, in addition to deterring crime, forfeiture generates sizable financial dividends for the involved agencies, leading provisions of civil and criminal forfeiture to become an integral part of the criminal justice process at both the state and federal levels.[10]

 With its increased use, however, the process of forfeiture has generated sub-

ment and turning police officers into revenue collectors.... Certainly, underfunded and hard-pressed government and law enforcement agencies could easily become accustomed to the large revenue created through civil forfeiture of drug-related property. For example, in 1988, Sevier County, Utah, collected $890,000, approximately twenty-one percent of its total revenue, from fines and forfeitures. In 1991, Sevier County collected $680,000 in criminal fines, $345,000 of which came from alleged drug runners. The County also seized more than twenty vehicles. The county attorney is the highest paid official in Sevier County and the second-highest paid elected prosecutor in Utah, even though that office is staffed by only the county attorney, a part-time deputy attorney, and a secretary. Sevier County has benefitted from these funds in various ways. For example, the County has used drug money to help construct a nine million dollar jail complex, used seized vehicles as police cars, paid the salary of one police officer, funded school drug-prevention programs, and funded drug and alcohol rehabilitation programs.... Granted, cash that is seized under the drug forfeiture laws often funds beneficial projects. Nevertheless, given the stake that law enforcement agencies have in this "gold mine," the potential for substantial abuse exists. The official zeal for, and often dependence on, the proceeds from forfeiture warrants scrutiny of the methods of accomplishing cash forfeiture. Judith D.Wolferts, *In re One Hundred Two Thousand Dollars: Cash–Friendly Civil Forfeiture*, 1993 UTAH L. REV. 971, 980–84 (footnotes omitted).

9. "Using forfeiture laws, the Justice Department, which includes the FBI and the Drug Enforcement Administration, seizes about $1 billion worth of private property annually." Linnet Myers, *Forfeiture Laws: Fair or Foul? Americans Not Guilty of Crimes Decry Loss of Property*, CHICAGO TR., March 12, 1996, at 6 (quoting Stefan Cassella, deputy chief of the Justice Department's asset forfeiture section). Indeed, as the Supreme Court has noted:

[T]he Government has a pecuniary interest in forfeiture that goes beyond merely separating a criminal from his ill-gotten gains; that legitimate interest extends to recovering all forfeitable assets, for such assets are deposited in a Fund that supports law-enforcement efforts in a variety of important and useful ways.... The sums of money that can be raised for law-enforcement activities this way are substantial, and the Government's interest in using the profits of crime to fund these activities should not be discounted.
*Caplin & Drysdale, Chartered*, 491 U.S. 617, 629, 109 S.Ct. 2646, 2654, 105 L.Ed.2d 528 (1989).

10. Currently more than one hundred federal statutes make some provision for civil forfeiture. *See* Paul S. Grossman, *Appellate Jurisdiction for Civil Forfeiture: The Case for the Continuation of Jurisdiction Beyond the Release of the Res*, 59 FORDHAM L. REV. 679, 679 n. 7 (1991) (citations omitted); Lawrence A. Kasten, Note, *Extending Constitutional Protection to Civil Forfeitures that Exceed Rough Remedial Compensation*, 60 GEO. WASH. L. REV. 194, 195 n. 3 (1991) (citations omitted). Of those, most frequently analyzed and seen in application are the forfeiture provisions of the Controlled Substances Act, set forth at 21 U.S.C. § 881, and the provisions of the Money Laundering Control Act, set forth at 18 U.S.C. § 981. *See generally* Arthur W. Leach & John G. Malcolm, *Criminal Forfeiture: An Appropriate Solution to the Civil Forfeiture Debate*, 10 Ga. St. U.L.Rev. 241 (1994); Steven L. Schwarcz & Alan E. Rothman, *Civil Forfeiture: A Higher Form of Commercial Law?*, 62 FORDHAM L. REV. 287 (1993); Kelly McClure, Note, *Federal Civil Forfeiture of Assets: How It Works and Why It Must*, 11 U. BRIDGEPORT L. REV. 419 (1991). Likewise, in Georgia and most of its sister states, the governing criminal statute makes provision for criminal and civil forfeiture, establishing specific procedures therefor. *See id; see also* O.C.G.A. § 16–13–49.

Nonetheless, many commentators have questioned the appropriateness of a government's pursuing revenue production by way of its criminal code. *See, e.g.,* Terrence G. Reed, *The Defense Case for RICO Reform*, 43 VAND. L. REV. 691, 703 (1990)("[c]riminal forfeiture ... was enacted as a new means to punish racketeers; it was never intended to be a bake sale for the Justice Department"); David J. Fried, *Rationalizing Criminal Forfeiture*, 79 J. CRIME & CRIMINOLOGY 328, 365–66 (1988) ("the conflict between the federal government and third party claimants to forfeited assets should not be exacerbated by giving the Justice Department an institutional stake in defeating private claims"); *see also* Mary M. Cheh, *Constitutional Limits on Using Civil Remedies To Achieve Criminal Law Objectives: Understanding and Transcending the Criminal–Civil Law Distinction*, 42 HASTINGS L.J. 1325, 1354 n. 161 (1991) ("forfeiture may actually frustrate the goal of victim recompense by depleting the assets a criminal has available for civil restitution").

stantial questions, not only as to the constitutional limits thereon,[11] but also with respect to the inequity which forfeiture may work upon the rights of third parties.[12] Such is particularly the case in civil forfeiture, wherein innocent owners and secured lenders may defend their rights in the subject property,[13] but unsecured lenders have no standing to contest forfeiture of perhaps all of a given debtor's assets.[14] Notwithstanding this lack of full representation in its development, however, a judgment of civil forfeiture may restructure the rights of any and all parties who might otherwise look to the debt-

11. See e.g., Thorp v. State, 264 Ga. 712, 450 S.E.2d 416 (1994) (noting that constitutional prohibitions upon excessive fines apply with equal force to civil, in rem forfeiture actions); Swails v. State, 263 Ga. 276, 431 S.E.2d 101, cert. denied, 510 U.S. 1011, 114 S.Ct. 602, 126 L.Ed.2d 567 (1993) (finding that provisions mandating forfeiture proceedings without jury trial violate neither the seventh amendment to the federal Constitution nor Georgia Constitution 1983, Art. I, Sec. I, Para. XI); Porter v. State, 196 Ga.App. 31, 395 S.E.2d 360 (1990) (concluding that subsection (c) of O.C.G.A. § 16–1349 does not violate the equal protection and due process clauses of the United States Constitution); Tant v. State, 247 Ga. 264, 275 S.E.2d 312 (1981) (holding that O.C.G.A. § 16–13–49 affords adequate notice and hearing so as to comport with due process of requirements of federal Constitution and the Georgia Constitution).

12. As one commentator has noted in this regard:

In order to understand how civil forfeiture actions affect creditors, it is first necessary to understand the process by which creditors, such as financial institutions, extend credit. In making lending decisions and in determining interest rates and other lending terms, financial institutions consider factors such as the borrower's financial condition, management, and the likelihood of both default and potential recovery of principal and interest on defaulted loans. In assessing the default risk, financial institutions also consider their rights and remedies under the Uniform Commercial Code and the Bankruptcy Code and the likelihood of recoveries.

Notably absent from this "checklist" is the risk of civil forfeiture of the borrower's assets. It is, of course, impossible at the time of the credit decision to estimate the likelihood of civil forfeiture because the underlying illicit action that may give rise to the forfeiture is as yet undiscovered, and also because the bringing of such an action is politically determined. Furthermore, even if the financial institution were to assume the worst—that each borrower's assets would be subject to civil forfeiture—it is impossible to estimate how claims will be paid, if at all.

Steven L. Schwartz & Alan E. Rothman, Civil Forfeiture: a Higher Form of Commercial Law?, 62 FORDHAM L. REV. 287, 303 (1993).

13. Like most statutes of its type, Georgia's forfeiture provision makes allowance for an innocent owner defense, whereby third parties may successfully challenge the propriety of a civil forfeiture. See O.C.G.A. § 16–13–49(e); see also State v. Sewell, 155 Ga.App. 734, 272 S.E.2d 514 (1980) (where nothing suggested an awareness by the creditor that the car subject to its security interest was being used for illegal transport of marijuana, the security interest was not forfeited). Generally speaking, however, a claimant person must hold some finite and articulable interest in the property to have standing to so oppose the forfeiture action. See Lockett v. State, 218 Ga.App. 289, 460 S.E.2d 857 (1995) (claimant did not have standing to contest forfeiture where claimant failed to demonstrate an ownership interest in the property); Chester v. State, 168 Ga.App. 618, 309 S.E.2d 897 (1983) (to have standing to contest a forfeiture, a party must have at least some property interest in the subject matter; that interest may be one of ownership, lease holder, or secured party, but there must be some substantial interest greater than an asserted "superior right of possession"); see also United States v. One Hundred Twenty–Two Thousand Forty–Three Dollars in United States Currency, 792 F.2d 1470, 1473 (9th Cir.1986); United States v. One 1978 Piper Navajo PA–31 Aircraft, 748 F.2d 316, 319 (5th Cir.1984) (interpreting the innocent owner defense under the federal system of civil forfeiture).

14. See e.g., US. v. $3,000 in Cash, 906 F.Supp. 1061 (E.D.Va.1995) (the term "owner" as used in connection with innocent owner defense to forfeiture of property, is interpreted liberally but does not encompass those with undefined interests in the seized property; specifically, unsecured creditors generally lack standing to challenge forfeiture, because such unsecured creditors cannot show that they hold an interest in the specific property forfeited); U.S. v. 105,-800 Shares of Common Stock of FirstRock Bancorp, Inc., 830 F.Supp. 1101 (N.D.Ill.1993) (an investor in stock purchased during conversion of mutual savings association properly qualified as an unsecured creditor without standing to challenge civil forfeiture of stock as proceeds of bank fraud; the investor merely transferred $10,000 to account of its depositor, and did not assert any security interest); Crenshaw v. State, 206 Ga.App. 271, 425 S.E.2d 660 (1992) (under Georgia law, a general unsecured creditor lacks a cognizable interest sufficient to grant it standing to challenge a forfeiture action against seized currency).

or's assets for payment, since it arises from a proceeding in rem.[15]

■ Noting this fact, and the remedy's increasingly revenue-producing function, commentators have divided sharply on the proper intersection of civil forfeiture and debtor-creditor law.[16] As the instant case demonstrates, that developing tension between the expanding process of civil forfeiture and creditors' rights becomes most pronounced when a debtor elects to file for bankruptcy during the pendency of a civil forfeiture of his or her property. In such cases, a crucial application of federal law shall determine whether civil forfeiture, albeit possibly a veiled revenue collection device, shall be excepted from bankruptcy's otherwise governing policy staying the collection efforts of creditors.[17] Alternatively, the court must determine whether bankruptcy's automatic stay shall be lifted, so as to prevent any debtor's escaping the forfeiture component of the criminal justice system.[18]

**15.** As an in rem action, civil forfeiture makes the property itself the defendant in such proceedings. When successful, civil forfeiture results in all rights in the subject property being vested in the government, thereby establishing the government's title against the world. Compounding this effect, a "relation back" doctrine makes the government's rights of ownership effective, not from the date of a forfeiture judgment's entry, but instead upon the date that wrongful conduct allegedly occurred. Thus, whenever an item of property directly or indirectly facilitates the commission of a crime, a presumption effectively arises that the government should have superior title to that item. Cf *United States v. 92 Buena Vista Avenue*, 507 U.S. 111, 113 S.Ct. 1126, 122 L.Ed.2d 469 (1993) (holding that such relation back does not actually take effect until a forfeiture judgment has been rendered).

**16.** Compare Myron M. Sheinfeld, et al., *Civil Forfeiture and Bankruptcy: the Conflicting Interests of the Debtor, Its Creditors and the Government*, 69 Am. Bankr. L.J. 87 (1995) (pointing to the dangers of civil forfeiture's expanding role and contending that courts must insure that governments' pursuit of such claim not be given special treatment in bankruptcy), and Steven L. Schwartz & Alan E. Rothman, *Civil Forfeiture: a Higher Form of Commercial Law?*, 62 Fordham L. Rev. 287 (1993) (arguing that civil forfeiture laws must be reformed to provide that assets not directly used in criminal activity shall be forfeited only to the extent of a debtor's equity after all claims of innocent creditors have been satisfied), with Michael S. Linscott, *Asset Forfeiture (Modern Anti–Drug Weapon): Is Bankruptcy A Defense?*, 25 Tulsa L.J. 617 (1990) (arguing that bankruptcy courts should give deference to the pendency of a civil forfeiture action).

This debate has gained substantial momentum from the entry of two recent Supreme Court decisions which circumscribed the forfeiture power. In the first of these twin decisions, *United States v. 92 Buena Vista Ave.*, 507 U.S. 111, 113 S.Ct. 1126, 122 L.Ed.2d 469 (1993), the Supreme Court clarified the scope of the relation back doctrine, whereby forfeiture is said to vest retroactively to the point of wrongful conduct. Presented with the question of whether such relation back precluded the assertion of the inno-cent owner defense by a subsequent owner, the Court held that forfeiture does not automatically vest title to property in the government. *Id.* at 123, 113 S.Ct. at 1134. Thus, under the *Buena Vista* rationale, until a decree of forfeiture is entered, "someone else owns the property" and a third party acquiring an interest in the property "may therefore invoke any defense available to the owner of the property before the forfeiture is decreed." *Id.*

In the second of its watershed forfeiture opinions, *Austin v. United States*, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), the Court called into question the very nature of the civil forfeiture remedy. Particularly, after examining the statute before it in detail, the Austin majority concluded that "forfeiture under [those] provisions constitutes 'payment to a sovereign as punishment for some offense,' and, as such, is subject to the limitations of the Eighth Amendment's Excessive Fines Clause." *Id.* at 621, 113 S.Ct. at 2812 (citations omitted).

Collectively, of course, these holdings demonstrate that a State's forfeiture power does not exist without limitation. More importantly for bankruptcy purposes, however, the *Austin* and *Buena Vista* holdings reveal that a State's claim of ownership by forfeiture may be defeated by an intervening good faith holder of an interest in the subject property, *see infra* note 22, and that certain forfeiture actions may warrant a treatment which recognizes their true character. *Cf.* 11 U.S.C. § 726 (relegating claims "for any fine, penalty, or forfeiture" not involving compensation for actual pecuniary loss to a fourth level of priority in distribution).

**17.** *See* 11 U.S.C. § 362(b)(4) & (5) (providing an exception from bankruptcy's automatic stay for any act by a governmental unit "to enforce such governmental unit's police or regulatory power").

**18.** While Bankruptcy Code section 362(a) automatically stays a wide array of collection and enforcement proceedings against the debtor and his property, section 362(b)(1) exempts from the stay "the commencement or continuation of a criminal action or proceeding against the debtor." *See* 11 U.S.C. § 362(b)(1). According to

As they pertain to the instant controversy, each of these questions shall be addressed in turn.

## II. Applicability of the Automatic Stay in the Civil Forfeiture Context.

■ Regarding the continuation of efforts at collection after filing, the Bankruptcy Code provides, in relevant part:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

\* \* \* \* \* \*

11 U.S.C. § 362(a)(1), (2) & (3). The legislative history of the Code explains the goal of these several protections:

The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

H.R. Rep. 95–595, at 340 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6296. Thus, for reasons of bankruptcy policy, section 362(a)'s interdicts action by any and all "entities," including governmental units. *See Penn Terra Ltd. v. Dept. of Envtl. Resources,* 733 F.2d 267, 271 (3d Cir.1984) ("the legislative history is clear that, in general, this [section] was intended to extend to governmental entities as well as private ones"); *see also In re Del Mission Ltd.,* 98 F.3d 1147 (9th Cir.1996) (State violated automatic stay by knowingly retaining taxes which it had been ordered to repay); *In re Pearson,* 917 F.2d 1215 (9th Cir.1990), *cert denied,* 503 U.S. 918, 112 S.Ct. 1291, 117 L.Ed.2d 514 (Bankruptcy Code's automatic stay provision binds all governmental units, including United States); *Small Business Admin. v. Rinehart,* 887 F.2d 165 (8th Cir.1989) (governmental agency violates automatic stay when it holds or freezes payments that debtor is otherwise entitled to receive).

■ Certain governmental actions, however, do not fall subject to the mandatory freeze of bankruptcy's automatic stay. Specifically, as Code section 362(b) reveals, the filing of a petition does not operate as a stay:

(4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

(5) under subsection (a)(2) of this section, of the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

11 U.S.C. § 362(b)(4), (5). These provisions, known commonly as the "police and regulatory power exceptions," essentially serve to

---

the House Report, the inclusion of this exception to the automatic stay stems from a broader concern that "[t]he bankruptcy laws are not [to be] a haven for criminal offenders." H.R.Rep. No. 95–595, p. 342 (1977), *reprinted in* U.S.C.C.A.N. 1978, p. 6299. To the extent, therefore, that a civil forfeiture action may be characterized as but an extension of the criminal justice process, not granting stay relief for such actions might be seen to run afoul of Congress' expressed intent to protect against such abuses of the system for relief in bankruptcy. *Cf.* 11 U.S.C. § 362(d) (providing for relief from bankruptcy's automatic stay for cause shown).

insure uninterrupted governance of those terms of state law which protect the public welfare.[19]

Understandably, much dispute relating to the effect of bankruptcy upon pending forfeiture actions has hinged upon whether such actions may be characterized as a valid exercise of the State's "police and regulatory power" within the meaning of Bankruptcy Code section 362(b)(4) and (5).[20] Difficult as such qualitative analyses may seem in the context of civil forfeiture, however, they unnecessarily distract a court's attention from the dispositive issue. By its own terms, the stay exception of section 362(b)(4) applies only to actions which otherwise would be stayed by operation of subsection (a)(1), i.e., an "action or proceeding *against the debtor* ... to recover a claim *against the debtor.*" 11 U.S.C. § 362(b)(4) (emphasis added). As an in rem action against property rather than the debtor himself, civil forfeiture *a fortiori* cannot constitute an action to which the stay of subsection (a)(1) applies.[21] Rather, civil forfeiture becomes stayed by operation of Code section 362(a)(3) as an "act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," such that it falls beyond the scope of section 362(b)(4)'s exception. *See*

*Weaver v. City of Knoxville (In re Thomas),* 179 B.R. 523, 526 n. 14 (Bankr.E.D.Tenn. 1995). For this reason, the State of Georgia's pending civil forfeiture action against property of the Debtors' estate remains stayed, notwithstanding Bankruptcy Code section 362(b).

### III. Propriety of Stay Relief.

Governmental entities, such as the State of Georgia, which desire to continue civil forfeiture against estate property will not find themselves entirely without remedy in the event of a bankruptcy case's commencement, however. As the Bankruptcy Code provides:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
>
> (2) with respect to a stay of an act against property under subsection
>
> (a) of this section, if—
>
> (A) the debtor does not have an equity in such property; and

*State of Wisconsin v. Weller (In re Weller),* 189 B.R. 467, 471 (Bankr.E.D.Wis.1995) ("[u]nder the section 362(b)(4) exception, proceedings to enforce forfeitures and penalties are free to proceed to judgment, including the entry of a monetary judgment").

**21.** As a cardinal rule of statutory construction, the Court must give effect to each term of a given Bankruptcy Code provision whenever possible. *See* NORMAN J. SINGER, SUTHERLAND ON STATUTORY CONSTRUCTION § 46.06 (5th ed.1992); *see also United States v. Nordic Village, Inc.,* 503 U.S. 30, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992) (in statutory construction, each word is to be given effect); *Cowart v. Nicklos Drilling Co.,* 505 U.S. 469, 476, 112 S.Ct. 2589, 2594, 120 L.Ed.2d 379 (1992) (repeating "the basic and unexceptional rule that courts must give effect to the clear meaning of statutes as written"). Thus, to the extent that the stay exception of section 362(b)(4) limits its application to acts otherwise stayed "under subsection (a)(1)," the court must presume that such an exception does not extend to acts stayed under section 362(b)(3) rather than section 362(b)(1).

**19.** As the legislative history of the Code explains, "[t]hus, where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay." S.Rep. No. 95–989, at 52 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5838.

**20.** Certain courts have held negatively on this question, reasoning that only those actions designed to protect public health should warrant such exception from bankruptcy's stay. *See, e.g., United States v. One Parcel Commonly Known as Star Route Box 1328, Glenwood, Washington County, Oregon,* 137 B.R. 802, 804 (D.Or.1992) (assuming that the forfeiture cases before it had become subject to bankruptcy's automatic stay); *Goff v. State of Oklahoma (In re Goff),* 159 B.R. 33, 39 (Bankr.D.Okla.1993) (holding that forfeiture was not an exercise of police or regulatory power). Other courts disagree, contending that the scope of valid "police and regulatory" functions should not be so arbitrarily limited. *See*

(B) such property is not necessary to an effective reorganization;

11 U.S.C. § 362(d). Estimations of "cause" under section 362(d) involve an intentionally broad and flexible inquiry, which permits the Court, as a matter of equity, to respond to inherently fact-sensitive situations. *See In re Texas State Optical, Inc.,* 188 B.R. 552 (Bankr.E.D.Tex.1995); *see also In re Milne,* 185 B.R. 280 (N.D.Ill.1995) (factors examined in determining whether to modify automatic stay for cause include interference with bankruptcy, good or bad faith of debtor, injury to debtor and other creditors if stay is modified, injury to movant if stay is not modified, and proportionality of harms from modifying or continuing stay); *In re Robinson,* 169 B.R. 356 (E.D.Va.1994) (when determining whether automatic stay should be lifted for cause, court should consider: (1) whether issues in litigation involve only state law, (2) whether modifying stay will promote judicial economy, (3) whether bankruptcy case will be disrupted if stay is not lifted, and (4) whether estate can be protected if stay is lifted). Thus, for example, when it appears that a particular bankruptcy filing amounts to an abuse of process, cause will exist for relief from the automatic stay. *Cf. I.R.S. v. Bacha,* 166 B.R. 611 (Bankr.D.Md.1993) ("cause" existed for lifting stay, to allow Internal Revenue Service to proceed with tax foreclosure sale, based on debtor's abuse of bankruptcy process in repeatedly filing for Chapter 11 relief on eve of two successive, scheduled tax sales); *In re Martin,* 97 B.R. 1013 (Bankr.N.D.Ga.1989) (debtor's filing of Chapter 7 petition, while Chapter 13 case in which stay had been lifted to permit creditor to proceed with foreclosure was still pending, was abusive and invalid, such that automatic stay would be annulled ab initio, and creditor would be permitted to complete its foreclo-sure by recording deed under power of sale); *but see In re Sentry Park Ltd.,* 87 B.R. 427 (Bankr.W.D.Tex.1988) (secured creditor failed to establish abuse of bankruptcy process where evidence indicated that case was filed on eve of foreclosure, shortly after unsuccessful attempt to block secured creditor in state court, but property was worth far more than secured creditor's mortgage against it). Likewise, where relief would permit the resolution of uniquely state law questions which necessarily must be decided as part of the case's administration, cause will exist to lift the automatic stay for that limited purpose. *See, e.g., In re Conference of African Union First Colored Methodist Protestant Church,* 184 B.R. 207 (Bankr. D.Del.1995) (existence of a more appropriate forum than the bankruptcy court constitutes "cause" for relief from automatic stay); *In re Milestone Educational Institute, Inc.,* 167 B.R. 716 (Bankr.D.Mass.1994) (creditor granted relief from the automatic stay so that state appellate court might address novel and unsettled issues of state receivership law); *In re Parkinson,* 102 B.R. 141 (Bankr. C.D.Ill.1988) (allowing matter to proceed in another forum may constitute "cause" for relief from stay; in deciding whether to grant relief, court must weigh interest of estate against hardships that will be incurred by creditor plaintiff).

■ As they bear upon the instant case, these various considerations support at least some degree of cause for stay relief on the State's behalf. By consequence, if not by design, the Debtors' filing of the instant case has forestalled the State of Georgia's pursuit of civil forfeiture. At the same time, the viability of any defenses to that state law civil action and the associated liquidation of the State's forfeiture claim must attend this case's administration.[22] Application of Geor-

22. As an aside, the Court notes that circumstances may provide the unsecured creditors with a degree of representation in bankruptcy that they normally would not enjoy under non-bankruptcy forfeiture law. In particular, Bankruptcy Code section 544 directs that the trustee, acting for the estate, may claim and assert "the rights and powers of ... a bona fide purchaser of real property from the debtor." *See* 11 U.S.C. § 544(a)(3). Subject to the requirements of a given civil forfeiture statute, it consequently would appear that unsecured creditors may reap the benefits of an "innocent owner" defense's being asserted by the trustee on the bankruptcy estate's behalf, if and when the automatic stay is lifted to allow the continuation of such proceedings. *Cf United States v. 92 Buena Vista Ave.,* 507 U.S. 111, 113 S.Ct. 1126, 122 L.Ed.2d 469 (1993) (noting that, until a decree of forfeiture is entered, "someone else owns the property" and a third party acquiring an interest in the property "may therefore invoke any defense available to

gia's civil forfeiture standard, furthermore, turns on questions of state law which more easily may be resolved by a state court tribunal. Thus, pursuant to Bankruptcy Code section 362(d), the automatic stay shall be lifted so that the propriety of civil forfeiture may be litigated in the Superior Court of Coweta County.

Nevertheless, relief shall be granted only to the extent that cause exists and the circumstances so warrant. In particular, the State shall merely be permitted to establish the viability of its forfeiture claim in the Superior Court. Recordation of any forfeiture judgment,[23] and any related efforts to assume control over the subject property shall continue to be stayed, pending dismissal of the debtor's case or further Order of this Court. *Cf In re Claughton*, 140 B.R. 861 (Bankr.W.D.N.C.1992), *aff'd*, 172 B.R. 12, *aff'd*, 33 F.3d 4 (including as a factor to be considered in lifting the automatic stay for cause whether modification of the stay to allow litigation to conclude will promote judicial economy, whether issues in the pending litigation involve only state law so that expertise of bankruptcy court is unnecessary, whether relief from the stay would interfere with the bankruptcy case, and whether the estate can be protected properly by requirement that creditors seek enforcement of any judgment through the bankruptcy court); *In re Neal*, 176 B.R. 30 (Bankr.D.Idaho 1994) (automatic stay lifted as matter of judicial economy, to allow creditor to pursue battery claim against Chapter 7 debtor in state court and to obtain a determination of the debtor's liability, subject to a limitation that creditor

would not be granted relief to collect any judgment rendered in such a state court proceeding).

## CONCLUSION

The Court having given due consideration to the Motion for Relief from the Automatic Stay by the State of Georgia and an objection thereto by Otis C. and Irene W. Bell, and it appearing that no statutory exception to bankruptcy's stay provision applies in this case, yet cause does exist for such relief from the automatic stay's terms, it hereby is **ORDERED** that the aforementioned Motion shall be **GRANTED,** subject to certain limitations. Particularly, relief from the automatic stay shall only be provided to the extent that the State may proceed to try its case for civil forfeiture of the Debtors home in the Superior Court of Coweta County, resolving the merits of that action and the validity of any defenses thereto. It is **FURTHER ORDERED,** however, that the State shall not record any ensuing judgment of forfeiture against the assets in question or enjoy any other form of stay relief to pursue the enforcement of such a judgment.

**IT IS SO ORDERED.**

---

the owner of the property before the forfeiture is decreed").

**23.** Like under most civil forfeiture statutes, forfeiture under Georgia's section 16–1349 relates back to the point of criminal conduct, such that the postpetition entry of a civil forfeiture judgment might otherwise have the effect of removing the subject property from the bankruptcy estate. *See* O.C.G.A. § 16–13–49(t)(1) & (2); *see also* 11 U.S.C. § 541 (measuring the bankruptcy estate by reference to the debtor's rights in property at the time of filing). Rather than permitting such a complete and retroactive circumvention of the bankruptcy process, the Court only shall allow the State to establish its substantive entitlement to a forfeiture claim, which debt may thereafter be treated in accordance with bankruptcy's standard distribution mechanism. *See,*

*e.g.,* 11 U.S.C. § 726 (relegating claims "for any fine, penalty, or forfeiture" not involving compensation for actual pecuniary loss to a fourth level of priority in distribution); *see also* 11 U.S.C. § 1325 (directing that a Chapter 13 plan shall be confirmed, inter alia, if it provides each holder of an unsecured claim with a distribution not less than that which they would receive under Chapter 7 liquidation); *see further* 11 U.S.C. § 1327(b) & (c) (providing that property of the estate shall vest in the debtor at confirmation, free and clear of any claims provided for by the plan); 11 U.S.C. § 1328(a) (providing Chapter 13 debtors with a discharge from debt obligations, subject only to the relevant limitation that no obligations of restitution or criminal fines may be discharged).